Chicago, St. Louis and Pittsburgh Railroad Company v. Wolcott.

No. 16,530.

CHICAGO, ST. LOUIS AND PITTSBURG RAILROAD COMPANY
v. WOLCOTT.

PLEADING.—*Prolixity of Details.*—*General Pleading.*—Where a subject comprehends a multiplicity of matters, and a great variety of facts, in order to avoid prolixity the law allows general pleading.

COMMON CARRIERS.—*Failure to Furnish Transportation for Freight.*— *Decline in Market.*—*Damages.*—A common carrier is liable in damages for losses occasioned to a shipper by reason of a failure to furnish transportation of his wares and produce when he has no other means of shipping them, whereby he is not able to reach the market before prices have fallen and a loss sustained.

SAME.—*Failure to Furnish Transportation to Points Beyond Its Line.*— *Decline in Market.*—*Damages.*—A common carrier is liable in damages for losses occasioned to a shipper by reason of a failure to furnish transportation of his wares and produce to points beyond its line, when he has no other means of shipping them, if it holds itself out and does furnish such transportation for others to such points, whereby he is not able to reach the market before prices have fallen and a loss sustained.

SAME.—*Inability to Furnish Cars.*—*Defense.*—If, in such an action, such carrier was not able to furnish cars at the time demanded, without undue interference with its business or with the rights of shippers at other points, that is a matter of defense for the company to show.

SAME.—*Over or Discriminating Charges, Action to Recover Back.*—*Voluntary Payment.*—A shipper may maintain an action against a common carrier for over or discriminating charges made against, and paid by, him; and the carrier can not defeat such action by claiming that the payment was voluntarily made, when it is shown that the carrier, in the bill of lading, announced that the owner or consignee should pay at the rate therein specified before the goods were delivered.

SAME.—*Overcharges.*—*Interstate Commerce.*—*Statute Construed.*—Section 4038, of the Revised Statutes of 1881, of this State, does not violate the law of interstate commerce, and is valid. It is a regulation to protect shippers doing business in this State from unjust overcharges for transportation.

SAME.—*Damages and Overcharges, Action to Recover Back.*—*Payment in Advance.*—In an action to recover damages for overcharges and a failure to furnish means of transportation on demand made, where the shipper suffers loss by the market declining before he reaches it

Chicago, St. Louis and Pittsburgh Railroad Company *v.* Wolcott.

with his produce, it is not necessary, to enable him to recover the amount of the overcharges and the damages thus occasioned, to pay or tender the amount of freight when the produce was offered for shipment and cars demanded, if it was not the custom of the carrier to exact the freight charges in advance; such a custom as where the owner or consignee is only required to pay before the produce is delivered to such consignee.

SAME.—*Testimony as to Fluctuations of the Market.*—In such an action, testimony as to the fluctuation of the markets is admissible in evidence on behalf of the plaintiff.

SAME.—*Statements of Officers and Agents of Carrier.*—The statements made to the shipper by the officers and agents of the carrier in charge at the place of shipment, relative to furnishing cars and means of transportation, are admissible in evidence on behalf of the plaintiff.

SAME.—*Assignment of Right of Action to Recover Damages.—Decline in Market.—Over or Discriminating Charges.*—A right of action to recover damages occasioned by a failure of a carrier to furnish cars to a shipper before the market for his produce declined, whereby he was damaged, and for discriminating or overcharge, may be assigned.

SAME.—*Must Serve All Alike.—Discrimination in Prices.—Recovery for Overcharges.*—A common carrier must serve all shippers, similarly situated, alike, and can not discriminate against one shipper in the amount charged him to his damage, and if it does, he may recover back the amount of the overcharges.

SUPREME COURT.—*Seal, Attaching to Clerk's Certificate to Transcript.*—The certificate of the clerk authenticating the transcript must have attached to it the seal of the lower court.

BILL OF EXCEPTIONS.—*Omission of Caption and Formal Ending.—Judge's Certificate Supplying Omission.*—The certificate of the trial judge to a paper not having the usual caption and formal ending of a bill of exceptions, certifying that the paper in question is a "bill of exceptions," and is "the original longhand manuscript of all the evidence" given in the cause, followed by the clerk's certificate calling the document "a bill of exceptions containing and being the original longhand transcript" filed in his office, may be taken to have cured the defect in omitting such caption and formal part.

EVIDENCE.—*Voluminous Document.—Testimony Concerning Result of Examination.*—Where books, records, papers and entries are voluminous, and of such a character as to render it difficult for the jury to arrive at a correct conclusion concerning amounts, balances and the like, an accountant may examine them and testify concerning the result of his examination.

PRACTICE.—*Waiver of Error in Admission of Evidence.*—The party com-

plaining of the character of evidence admitted may waive the error occasioned by its admission by a subsequent admission that such evidence will not be controverted. Such waiver amounts to a withdrawal of all objections made to its character.

SAME.—*Irrelevant Evidence.*—*Immaterial Error.*—*Special Verdict Showing Error Harmless.*—The admission of irrelevant evidence, not sufficient to reverse the judgment, is an immaterial error, and this is true if the special verdict shows that the jury based its findings on other evidence.

DEPOSITIONS.—*Motion to Suppress.*—*Exception.*—In order to be available on appeal, an exception to the overruling of a motion to suppress a deposition must be taken.

From the Cass Circuit Court.

*N. O. Ross*, for appellant.

*W. H. H. Miller, F. Winter, J. B. Elam, J. C. Nelson, Q. O. Myers, M. Winfield, S. T. McConnell, A. G. Jenkins* and *A. Wolcott*, for appellee.

HOWARD, J.—This action was brought on the 5th day of June, 1889, in the Jasper Circuit Court, against the appellant to recover damages for alleged failures to transport grain, hay and straw from Wolcott, Seafield, and Remington, Indiana, to eastern markets, covering the entire time from September 1, 1883, to June 5, 1889.

The venue was, by agreement, changed from Jasper to Cass county, and on the 4th day of February, 1890, an amended complaint in five paragraphs was filed in the Cass Circuit Court. The paragraphs are substantially alike, except that each is based upon business done by appellee individually or in connection with other persons. None of such other persons, however, were parties to the judgment in favor of appellee, and none, therefore, are parties to this appeal.

The material allegations of the complaint are, that from the first day of September, 1883, the appellee was engaged in the business of buying, for shipment to eastern cities, hay, straw, oats, and other farm products

at the station of Wolcott, in White county, and at other points named; that for the purpose of facilitating such business, appellee purchased, built and maintained hay barns, presses, elevators, and storehouses, at great expense, to wit, fifty thousand dollars; that the appellant was, on said first day of September, 1883, and for a long time before, and has ever since been, a corporation engaged in the business of a common carrier and shipper of straw, hay, grain, and other kinds of farm products, from and between said stations of Wolcott, and others named, in the State of Indiana, to Chicago, Louisville, Boston, New York, and other cities named, in the eastern and central parts of the United States; that appellant scheduled its freight rates, without division into parts or interests, to all the cities and towns aforesaid, and also to all the Atlantic seaboard cities, and to all intervening towns and cities, intermediate between Wolcott and such cities, and has issued shipping bills, without change of cars, from Wolcott to all said cities and towns; that appellant, during all said time, held itself out as a through shipper of such farm products from Wolcott, and appellee's said other shipping points, to each and every one of the cities and towns aforesaid; that appellant advertised for freight business, and continuously operated the sole and only line of railroad over which said farm products could be transferred to market, during the whole time, from said 1st day of September, 1883, until the bringing of this suit, June 4, 1889; that during said time appellant owned and operated a line of railroad from said shipping points directly to Chicago, Columbus, Pittsburg and St. Louis, and, in fact, controlled such an interest in, and held such shipping contract with, what is called the Pennsylvania system and with other railways; that no reshipment or rebilling of freight was required between said shipping stations and

the cities and towns aforesaid; that during all said time appellant was supplied with cars, engines and other means and facilities amply sufficient to do all the business over its roads and connecting lines aforesaid; that appellee was induced to enter into said business of buying and shipping farm products at said stations on the assurance of appellant that it was a common carrier and would, with promptness and diligence, transport such products to the markets aforesaid; that appellant held itself out to appellee as a common carrier for hire on a continuous line from appellee's places of business to the said markets, by a continuous line of transit; that relying on said conduct and assurances of appellant, appellee purchased large quantities of said products at Wolcott and other shipping points named during all said time, the particulars of which as to amounts, times of purchase, etc., are set out in detail; all of which, from time to time, as the same were purchased, was offered and tendered to appellant for shipment, with requests for suitable cars therefor, to the several markets aforesaid; that appellant failed, neglected and refused to furnish cars as requested, so that appellee had on hand, and in store at his said places of business large quantities of said products, all as set out in detail, at times named; that at the several times when said products were in store, and on hand for shipment as aforesaid, appellee demanded of appellant cars and means of transportation, and that appellant transport such products to the cities and towns aforesaid on its advertised line of shipment, demanding such cars as were controlled by the appellant company, which demand the appellant refused, and neglected to supply; that appellee was at all times ready, willing and able to pay to appellant the usual customary rates for shipment charged by it to the markets aforesaid; but appellant failed and re-

fused to transport said property or any part thereof within a reasonable time, and until after so long delay that appellee had to suspend business; that prices declined, cost of storage and other expenses increased, including use of warehouses, additional expense of handling such merchandise, interest on money invested, additional insurance and shrinkage of property, which caused appellee great and irreparable damages, all as set out in detail; that appellant raised and advanced the rate of freight after the goods were offered for shipments, in amounts and at times as stated. Other specific allegations of loss are made.

It is further alleged that while grain and hay were being offered for transportation, and while prices were high at the points to which appellee desired to ship, the appellant had, or could have with reasonable care and diligence, cars sufficient to transmit to such markets all the products aforesaid; but that appellant failed and refused to supply such cars, but used the same exclusively to take freight at railroad crossings and competing places not contiguous to appellant's line of railroad, and neglected and refused appellee's freight merely because appellee had no competitive line of railroad on which to ship his hay and grain. The several items of loss by such decline of prices are set out. The demand for damages for all losses to appellee for the six years is fifty thousand dollars.

Motions were made by appellant and overruled by the court, to require appellee to separate his complaint into paragraphs. Of this counsel for appellant says: "Appellant insists that each and every separate demand of cars and the refusal to furnish when it was its duty to do so, constituted a distinct and separate cause of action, and that more than one such cause of action can not properly be stated in the same paragraph of complaint.

Chicago, St. Louis and Pittsburgh Railroad Company *v.* Wolcott.

The several and independent causes of action, amounting to several hundred in number, and covering a period of near six years, are inserted in one paragraph of the complaint.''

We are inclined to think that counsel's own statement is a sufficient refutation of the contention on this point. Such a complaint of several hundred paragraphs, as contemplated by counsel, would break down of its own weight.

In I Chitty's Pleading 235, as cited by PERKINS, J., in *State* v. *McCormack*, 2 Ind. 305, it is stated that: ''In civil cases, 'it is a rule that where a subject comprehends multiplicity of matter, and a great variety of facts, there, in order to avoid prolixity, the law allows general pleading.' '' See, also, *Gaff* v. *Hutchinson*, 38 Ind. 341.

The court also overruled a motion to make the complaint more specific. At first appellee depended upon exhibits to the complaint and upon the recitals in such exhibits, as a sufficient substitute for specific allegations as to the times when, the places from and to which, and the articles and amounts for which transportation was demanded; also, as to values of articles, times at which freight rates were advanced, the length of time articles were delayed in shipment, etc.

These exhibits were held by the court insufficient and improper for such purposes and were stricken out on motion. Afterwards, however, by leave of court, the complaint was so amended that the particulars, as we think, were sufficiently alleged.

The complaint is further attacked in arguing against the ruling of the court on demurrer. We think that the amendment to the complaint, above referred to, setting out the particulars as to times when demand was made

and amount and character of freight, supplied any de-
fects that theretofore existed in the complaint.    In addi-
tion, the observation already made is to be kept in mind,
that in a case like this which comprehends a multiplicity
of matter, the law yields to the necessity of the situation,
and to avoid prolixity in the statement of details general
pleading is not only allowed, but is to be commended.
The complaint is already as full of details as is desira-
ble.    Whatever is not stated is more properly matter of
evidence than of pleadings.    The general facts are suf-
ficiently pleaded.    The jury, in their special verdict,
made their findings explicit as to these general allega-
tions in all cases where there was any finding for ap-
pellee.    The indefiniteness of the complaint, if any, was
thus cured.

As to the contention that the complaint should state
facts showing that the appellant could furnish cars at
the several times and in the numbers required, that was
matter for defense.    If the company were in fact unable
to furnish the required cars without undue interference
with its business or with the rights of shippers at other
points, that should be shown by the company.    The
company held itself out to the appellee, and to the pub-
lic generally, as a common carrier to the several markets
named.

The complaint alleges that there was no competition
against appellant at the shipping points of appellee, and
that appellant discriminated against appellee by refusing
him cars and at the same time furnishing cars to others
doing business at competing points.

We think the allegations of the complaint were quite
sufficient on this point, and if there were any reasons
why appellant could not furnish cars when demanded,
appellant should aver the same by way of answer.    Ap-
pellant knew the conditions of its own business much

better than appellee could know it.　See *Pittsburg, etc., R. W. Co.* v. *Racer,* 5 Ind. App. 209; *Pittsburg, etc., R. W. Co.* v. *Morton,* 61 Ind. 539.

It is finally contended that the complaint is defective, for the reason that the cause of action arose in favor of appellee jointly with others, and that the interest therein held by those others could not be assigned to appellee, as was here attempted, inasmuch as actions in tort can not be assigned.

It is true that the right of action for mere personal torts, such as assault and battery, which die with the party and do not survive to his personal representatives, can not be assigned.

The wrong charged as done by appellant in this case, is the violation of sections 5185, 5190, R. S. 1894 (sections 3925, 3926, R. S. 1881), requiring railroad companies to furnish sufficient accommodations for the transportation of such passengers and property as shall, within a reasonable time previous thereto, offer or be offered for transportation.　There is no fine or penalty attached, but the corporation is required to pay to the aggrieved party all damages sustained.

In *Louisville, etc., R. W. Co.* v. *Goodbar,* 88 Ind. 213, it was held that a claim against a railroad company under the statute providing for damages for the killing of stock may be assigned.　The measure of the damages in that case was the value of the animal killed; in this case it is the loss to the business and property of appellee occasioned by the failure of the company to transport the property when demanded.　In both cases the action is for damages to the owner of property for the wrong done thereto by a railway company in violation of the statute.　If the right of action may be assigned in the one case, it may be in the other, and we are of opinion that the right of action in each case, being for damages

to property, and not to person, was assignable. See, also, *Patterson* v. *Crawford*, 12 Ind. 241; Pomeroy Remedies and Remedial Rights (2d ed.), sections 144, 147; 1 Am. and Eng. Encyc. of Law, 833, and authorities cited in notes.

Many questions are discussed in relation to the motion for a new trial. It seems to admit of doubt whether the bill of exceptions, as set out in the transcript, is properly in the record. The transcript fails to show "the usual formula for the beginning of an ordinary bill of exceptions," followed by a recital as to the evidence, as suggested by Judge MITCHELL in the case of *Wagoner* v. *Wilson*, 108 Ind. 210. Neither is there "the usual formal ending of an ordinary bill of exceptions." In a certificate signed by the judge, the paper in question is called "a bill of exceptions,  *  *  *  being the original longhand manuscript of all the evidence." But the longhand manuscript itself is not a bill of exceptions. Rather, as the statute says, it should "have been incorporated in a bill of exceptions," after having first been filed in the clerk's office. In the clerk's certificate, also, the document is styled "a bill of exceptions  *  *  * containing and being the original longhand manuscript." See *Marshall, Admr.*, v. *State, ex rel.*, 107 Ind. 173; *Board, etc.*, v. *Huffman, Admr.*, 134 Ind. 1.

In addition, it appears that the only certificate of the clerk authenticating the transcript is without the seal of the court. Such seal has, in a recent case, been held necessary. *Conkey* v. *Conder*, 137 Ind. 441.

Appellee has, however, made no objection to these defects, but has discussed the evidence at length, as if the record was duly authenticated. For this reason, therefore, and also for the reason that, by very liberal intendment, it may perhaps be said that the certificate of the trial judge has cured the defects referred to, we have

concluded to consider the questions raised under appellant's assignment of error, that the court erred in overruling the motion for a new trial.

It is first urged that the court erred in overruling the motion to suppress certain questions and answers in the deposition of Percy S. Taylor. It is claimed that the evidence thus elicited was irrelevant; that would not make the error, if it were one, sufficient to reverse the judgment. *Bischof* v. *Coffelt*, 6 Ind. 23.

But it does not seem that the question is in the record. The court ordered the motion to suppress, together with the rulings of the court thereon and the exceptions of appellant, to be made a part of the record. Whether such motion, rulings and exceptions could thus be made a part of the record without a bill of exceptions we need not say; for while the motion to suppress and reasons therefor were set out in full, as ordered, yet the rulings of the court and the exceptions of appellant, if any there were, are wholly omitted from the record. It is true that, in the general bill of exceptions, when the deposition was offered to be read in evidence, appellant objected to its introduction; but the reasons there given, other than those relating to irrelevancy, rather tend to show that the ruling of the court, in admitting the evidence, was correct. These reasons show that the appellee was interested in the business, even before the assignment of any cause of action was made to him. We have already seen that the fact that the wrong charged against appellant was the violation of a statute which prescribed damages for such violation, did not prevent the assignment of a cause of action based on such violation.

It is objected that the court permitted the witness, William H. Clark, to testify as to the contents of the purchasing and receiving books of appellee, using, while giving his evidence, an abstract of those books made by

himself after his examination of the originals. It has been held that where books, records, papers and entries are voluminous, and of such a character as to render it difficult for the jury to arrive at a correct conclusion as to amounts, balances, etc., accountants may be allowed to examine such books, etc., and testify as to the result. *Hollingsworth* v. *State*, 111 Ind. 289; *Culver, Admx.*, v. *Marks*, 122 Ind. 554; *Equitable, etc., Ins. Co.* v. *Stout*, 135 Ind. 444.

Besides, we are of opinion that appellant, on the trial, waived the right to insist upon this objection. When the appellee was afterward on the witness stand and interrogated as to the same matters, counsel for appellant stated: ''The defense will not attempt to controvert the amount received and shipped out as shown by Mr. Clark's statement.'' This would seem to have amounted to a withdrawal of all objections made to the character of the evidence given by the witness Clark.

It is next objected that the court permitted the witness, Henry Wolcott, to testify as to advances made in rates of freight by appellant after there had been a tender of freight for shipment and a demand for cars. It is urged that the payments of such advances made by appellee were voluntary and can not therefore be recovered back.

We think, in the first place, that it was clearly established that the freight paid was not a voluntary payment. In the printed bill of lading used by appellant was the following condition: ''Owner or consignee shall pay at the rate below stated, freight charges before delivery, and according to weights as ascertained by either carrier.''

Appellee had one alternative only according to which he might refuse to pay the freight exacted by appellant, that is, not to ship his farm products to market. If he did ship, however, either he or his consignee must pay

the freight before the goods would be delivered.    There was nothing voluntary about such a payment.

Section 5333, R. S. 1894 (section 4038, R. S. 1881), provides that, "The various railroad corporations doing business within the State of Indiana shall not, at any time, increase or advance their rates of freight, or charge for the transportation thereof from one point to another a sum greater than the rate of freight or charge for transportation asked or charged by said railroad corporations at the time such freight is offered or tendered to said railroad corporations for transportation."

If the overcharges made in violation of this section of the statute can not be recovered back, the statute is itself a nullity.    See *Louisville, etc., R. R. Co.* v. *Wilson*, 132 Ind. 517, and authorities there collected.

Neither is it true that the foregoing statute is invalid as being in conflict with the right of Congress to legislate upon interstate commerce.    It is a regulation to protect shippers doing business in the State from unjust overcharges for transportation.

The admission of certain evidence as to the value, at given dates, of hay and other products, at the shipping points, while improper, was harmless.

The special verdict shows that the jury based their findings of damage by reason of the falling markets upon the price of the different products at the points of destination, which was correct.    Appellant was not, therefore, harmed by such irrelevant testimony.

Testimony as to the fluctuation of the markets was certainly admissible.

Because the amount of the freight was not paid or tendered when the goods were offered for shipment and cars demanded, it is argued that there could be no recovery.    That depends on the custom of the carrier.    In this case, as we have seen, appellant's own bill of lad-

ing shows that the freight charges were not exacted in advance. The owner or the consignee was required only to pay the freight before the goods were delivered to the consignee. It is not contended that the goods were, or could be, taken from the carrier without payment of the freight due.

There was no error in admitting evidence of statements made to appellee by the officers and agents of appellant in relation to furnishing cars, and other like matters. As to such things, appellant could speak only by such agents. By its printed rules and by the spoken words of its officers and agents alone, could appellant communicate with appellee.

Certain instructions were refused by the court, and this is complained of as error. As to some of the instructions so refused, there was, as we think, no error committed; as to all of them no harm was done appellant, as the jury made no finding of damages on the matters to which the instructions related.

The verdict is fully supported by the evidence. Indeed, the jury rejected a large part, fully three-fourths of the claims of appellee, and only allowed that which was not only fully supported by the evidence but was also unquestionably authorized by law.

The appellant held itself out as a common carrier of such freight as appellee supplied, and to all the points to which appellee desired to ship his products, as alleged in the complaint. Of this there is no question.

In *Pittsburg, etc., R. W. Co.* v. *Morton, supra*, 61 Ind. 577, the court says: "Doubtless a common carrier may so hold himself out to the public as to make himself liable for not receiving and carrying goods beyond his own line." This, without question, appellant did in this case. It is also clear, as we think, that appellant discriminated against appellee, who had no other means of

shipment than by appellant's railroad, and refused to furnish him with cars at the same time that it supplied cars freely to other shippers at competing points.

We find nothing available for the reversal of the judgment, which is therefore affirmed.

.Filed Jan. 11, 1895; petition for a rehearing overruled May 3, 1895.