IN THE

# APPELLATE · COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1909, IN THE NINETY-THIRD AND NINETY-FOURTH YEARS OF THE STATE.

---

## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* WOOD ET AL.

[No. 5,988. Filed May 26, 1908. Rehearing denied June 4, 1909. Transfer denied December 10, 1909.]

1. COURTS.—*Jurisdiction.—Interstate Commerce.—Breach of Federal Statute.*—The jurisdiction of an action for the breach of a duty imposed by a provision of the interstate commerce law, is in the federal court. p. 7.

2. COURTS.—*Jurisdiction.—Interstate Commerce.—Breach of Shipping Contracts.—Railroads.*—The jurisdiction of an ordinary action for damages for the breach of a contract by a carrier to transport freight to a city in another state, is concurrently in the state and federal courts. p. 7.

3. COURTS. — *Jurisdiction. — Interstate Commerce. — Railroads. — Breach of Common-Law Duty.*—An action against a railroad company for failure to furnish cars for shipment into another state is not founded upon the interstate commerce act, but upon a breach of such company's common-law duty. p. 8.

4. REMOVAL OF CAUSES.—*Failure to Move for.—Jurisdiction.*—Where a case is removable to the federal court, but the parties fail to move therefor, the state court has jurisdiction to try the case. p. 9.

5. BANKRUPTCY.—*Jurisdiction.*—The federal courts have exclusive jurisdiction of proceedings in bankruptcy. p. 9.

6. APPEAL.—*Overruling Motion to Separate Causes.*—The erroneous overruling of a motion to separate the causes of action stated in the complaint does not constitute reversible error. p. 9.

7. CARRIERS.—*Railroads.—Failure to Provide Cars.—Kinds of.—Complaint.*—A complaint alleging that defendant railroad company was a common carrier of grain between certain points, that

the plaintiffs tendered grain for shipment to such points and demanded "suitable cars" therefor, and that defendant refused to furnish them, sufficiently shows the kind of cars demanded. p. 10.

8. CARRIERS.—*Railroads.—Complaint.—Conclusions.*—An allegation that defendant railroad company held itself out as a carrier of goods between certain points is one of fact, and not a mere conclusion. p. 10.

9. CARRIERS.—*Railroads.—Issuance of Bills of Lading.—Failure to Allege.—Complaint.*—A complaint against a railroad company for failure to furnish cars for the shipment of grain to a certain point beyond its own line, is not bad for failing to allege that such company issued bills of lading to points beyond its own line, there being an allegation that the company held itself out as a carrier to such points. p. 10.

10. CARRIERS.— *Railroads.— Freight.— Payment of.— Complaint.*— A complaint alleging that the plaintiffs tendered their grain to defendant railroad company for shipment and that they were "willing, ready and able to pay" the freight thereon, is sufficient, since the quantity of grain to be shipped depended on the number and capacity of the cars to be furnished. p.11.

11. CARRIERS.—*Railroads.—Freight Discriminations.—Complaint.*— A complaint alleging that defendant railroad company "unlawfully, habitually and wilfully discriminated against plaintiffs and their stations" in favor of other cities, sufficiently alleges discriminations. p. 11.

12. CARRIERS.— *Railroads.— Shipments Beyond Own Lines.—Evidence.*—Evidence that a railroad company held itself out as a carrier of freight to certain points sustains a judgment against it for refusing to furnish cars to use for shipment thereto, though such company's bills of lading, to the plaintiffs' knowledge, limited its liability at a certain intermediate point. p. 11.

13. APPEAL.— *Evidence.— Sufficiency.*—In determining the sufficiency of evidence to sustain a verdict, only that favorable to the successful party will be considered. p. 12.

14. CARRIERS.—*Railroads.—Discrimination.—Evidence.*— Evidence that shippers at junction points were furnished with desired cars and that the plaintiffs, at intermediate points, were furnished none, shows a discrimination. pp. 12, 17.

15. CARRIERS.—*Railroads.—Refusal to Transport Freight.—Tender of Payment of Charges.*—Evidence that the plaintiffs were ready, willing and able to pay freight charges is admissible in an action against a railroad company for failing to transport goods. p. 12.

16. DAMAGES.—*Measure of.—Railroads.—Delay in Transporting Goods.*—The damages recoverable against a railroad company for its delay in transporting goods is the difference in price of the goods at the time when they should have arrived, and when they

actually arrived at their destination, less the freight charges. p. 12.

17. DAMAGES.—*Diminution of.—Expenses.—Railroads.—Freight.*— A shipper whose freight is refused by a railroad company must handle his goods so as to reduce as much as possible his damages, and, in doing so, is entitled to recompense for expenses incurred. p. 13.

18. CARRIERS.—*Railroads.—Refusal to Transport Grain.—Damages.* —Where a railroad company refused to transport the plaintiffs' grain to Baltimore, and by reason thereof they were compelled to transport such grain to another point to preserve it, the damage consists in the difference between the selling price received, after making allowance for the difference in the cost of transportation, and the selling price at Baltimore when it should have arrived there. p. 13.

19. TRIAL.—*Instructions.—How Considered.*—Instructions will be considered as a whole, and if they fairly state the law, and the jury were not misled thereby, the judgment will not be reversed, though a single instruction alone might seem incorrect. p. 13.

20. CARRIERS.—*Railroads.—Instructions. — Omissions.— Supplying by Others.*—An instruction failing to state that if it was impossible for defendant railroad company to deliver the grain, the company would not be liable, is not misleading where a subsequent instruction expressly told such jury that under such circumstances the company would not be liable. p. 14.

21. CARRIERS.—*Railroads.—Discrimination.—Instructions.*— An instruction that discrimination by railroad companies, as to shippers, is unlawful only when the conditions are similar, is not erroneous. p. 14.

22. TRIAL.—*Instructions.—Abstract.—Failing to Apply.*—An abstract instruction is not erroneous, where the application thereof to the facts is made in other instructions. p. 14.

23. CARRIERS.—*Railroads.—Failure to Transport.—Instructions.*— An instruction that if defendant railroad company held itself out to transport goods to a certain point it would be liable for its failure to furnish cars to ship to such point, is not erroneous. p. 15.

24. CARRIERS.—*Railroads.—Transporting Freight.— Duty. — Complaint.*—A complaint alleging that defendant railroad company held itself out as a common carrier of grain to certain points, that the plaintiffs demanded cars in which to ship grain to such points, and that they were ready and willing to pay the charges, shows a duty on the part of the company to furnish the cars desired. p. 16.

25. RAILROADS.—*Common-Law Duty.*—At the common law it is a railroad company's duty to serve the public impartially. p. 16.

From Howard Circuit Court; *J. F. Elliott*, Judge.

Action by George G. Wood and another against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*John L. Rupe* and *G. E. Ross*, for appellant.

*L. B. Nash, J. K. Roberts, Blacklidge & Wolf* and *Miller, Shirley & Miller*, for appellees.

WATSON, J.—Appellees sued appellant to recover damages for failure to furnish cars for shipment of corn from appellees' elevators at Windfall City, Curtisville and Nevada, Tipton county, Indiana, and at Hemlock, Howard county, Indiana.

The amended complaint, as filed, was in six paragraphs, but the third paragraph was dismissed. The first paragraph of the amended complaint, in substance, alleges that the plaintiffs are owners of large and expensive grain elevators at Windfall City, Curtisville and Nevada, Tipton county, Indiana, and at Hemlock, Howard county, Indiana; that defendant owned and operated the only line of railroad passing said stations named, and that it advertised and held itself out as a "carrier of grain to Chicago, Cincinnati, Indianapolis, Baltimore and Newport News without change of cars, and solicited plaintiffs' business as such through carrier;" that from November 22, 1902, to May 23, 1903, plaintiffs purchased and had stored in their said elevators, located at the several points named, large quantities of corn for shipment to Baltimore, Newport News and other markets named, and from day to day between said named dates demanded from defendant cars for the shipment of such corn; that defendant failed to furnish cars for the shipment of the corn from the elevators at the times demanded, or within reasonable time after demand, by reason of which unreasonable delay in furnishing cars the corn heated in such elevators and was thereby damaged; that plaintiffs

were compelled to pay interest upon capital used in the purchase of corn, by reason of the defendant's unreasonable delay in furnishing cars for shipment; that after demand had been made by plaintiffs for cars, and a reasonable time had elapsed for furnishing them, defendant raised its freight rates on corn shipments so that plaintiffs were required to pay an advanced rate when the corn was shipped; that after plaintiffs had demanded cars for the shipment of their corn, and a reasonable time had elapsed for furnishing them, the price of corn in the market declined, so that, by reason of the failure of defendant to furnish cars within a reasonable time, plaintiffs suffered loss and damage, in interest paid on money invested in corn, to the amount of $2,000, on account of deterioration of corn by heating in their elevators, $4,000, on account of additional freight paid, because of the raising of the rate by appellant, $2,000, and on account of loss in decline of market, $15,000—in all $23,000.

The second paragraph of the amended complaint alleges substantially the same facts as the first, except that the second alleges a different theory, as a basis of recovery, and facts in support of such theory, viz.: That at all times from November 22, 1902, to May 23, 1903, defendant was supplied with an ample number of cars and other facilities properly and promptly to receive and transport any and all grain offered for shipment along its lines, including the stations of Hemlock, Nevada, Curtisville and Windfall City, where plaintiffs' elevators were; that plaintiffs had no other means of shipment than defendant's line of road, and were at all times ready to pay the freight charges, but that defendant, during the entire period between the dates named, unlawfully, habitually and wilfully discriminated against plaintiffs and their stations in favor of the cities of Kokomo and Elwood and the town of Bunker Hill, at which points there were competing lines of railroad, and at other points where there were competing lines; that in

April and May, 1903, plaintiffs were compelled to send 5,000 bushels of heated corn to Toledo, Ohio, to be cured and kiln dried, at a total cost of $500, and the damages claimed under this paragraph are on account of advance in freight rates, $2,000; on account of decline in market price, $15,000; on account of interest, $1,000; on account of deterioration in grain, $1,000; on account of curing grain, $500—in all $19,500.

The fourth and fifth paragraphs of the complaint are, as to their allegations, the same as the first and second, except that they relate wholly to the business of the firm carried on at the elevator and mill at Windfall City, and operated in the name of Jesse C. Hadley. The sixth paragraph alleges that contracts were made in the name of Jesse C. Hadley for shipments of grain in November, 1902, to John R. Gray, Indianapolis, Indiana, 10,000 bushels of corn, and to F. M. Murphy, Indianapolis, Indiana, 10,000 bushels of corn, and that plaintiffs were required to pay under said contracts, for their default therein occasioned by defendant's failure to furnish cars, $250 to John R. Gray, and $700 to F. M. Murphy.

Appellant's motion to separate and number the causes of action set forth in each paragraph of the complaint was overruled, also the separate demurrers to each paragraph thereof. At the close of appellees' evidence appellant moved to dismiss the cause for want of jurisdiction, but the motion was overruled. The cause was tried before a jury, which returned a verdict for appellees, and judgment was rendered thereon in the sum of $2,500. A motion for a new trial was then made and overruled.

The errors assigned and relied upon in this appeal were: (1) Overruling the motion to dismiss for want of jurisdiction; (2) overruling the motion to separate and number the several causes of action set forth in the first, second, fourth, fifth and sixth paragraphs of the complaint; (3)

overruling appellant's demurrer to each of said paragraphs; (4) overruling the motion for a new trial.

A question of primary importance urged in this case is that of jurisdiction. Appellant contends that since the action was for damages for failing to furnish cars to ship corn, which the evidence showed was to be carried beyond the boundaries of the State, it was an action arising under the interstate commerce act, and that exclusive jurisdiction thereof was vested in the federal courts.

1. It has repeatedly been held that the jurisdiction of all actions, brought under the remedial sections of the interstate commerce act to enforce its provisions, is exclusively in the federal courts.

2. But where the action neither arises from said act, nor is based thereon, a cause, the subject-matter of which pertains to interstate commerce, is one in which a federal question may be raised, and if so, then the federal courts have jurisdiction concurrent with that of the State courts, and there is proper ground for a petition to remove to the federal courts. Judson, Interstate Commerce, §§44, 248.

The case of *Murray* v. *Chicago, etc., R. Co.* (1894), 62 Fed. 24, was an action to recover damages for alleged unreasonable rates charged for transporting freight. At pages 42 and 43 the court said: "A further point is made in support of the demurrer, to the effect that this court succeeds only to the jurisdiction of the state court in which the action was originally brought, and that state courts have no jurisdiction over cases arising out of interstate commerce, the argument being that, as the state cannot legislate touching interstate commerce, the state courts are without power to determine cases of the like character. This position is not well taken. The limitations upon the legislative power of the Nation and of the several states do not necessarily apply to the judicial branches of the national and state govern-

ments. The legislature of a state cannot abrogate or modify any of the provisions of the federal Constitution or of the acts of congress touching matters within congressional control, but the courts of the state, in the absence of a prohibitory provision in the federal Constitution or acts of congress, have full jurisdiction over cases arising under the Constitution and laws of the United States. The courts of the states are constantly called upon to hear and decide cases arising under the federal Constitution and laws, just as the courts of the United States are called upon to hear and decide cases arising under the laws of the state, when the adverse parties are citizens of different states. The duty of the courts is to explain, apply, and enforce the existing law in the particular cases brought before them. If the law applicable to a given case is of federal origin, the legislature of a state cannot abrogate or change it, but the courts of the state may apply and enforce it; and hence the fact that a given subject, like interstate commerce, is beyond state legislative control, does not, *ipso facto,* prevent the courts of the state from exercising jurisdiction over cases which grow out of this commerce. Had this action remained in the state court in which it was originally brought, that court would have had jurisdiction to hear and determine the issues between the parties, because congress has not enacted that jurisdiction over cases of this character is confined exclusively to the courts of the United States, and therefore the jurisdiction of the state court was full and complete.''

In the case we are considering the action was based upon the carrier's common-law duty to furnish facilities for shipping, and, although the damage arose by the act of a carrier engaged in interstate business, the action is not one to enforce the act of congress regulating commerce between the states.

3.

Had appellant petitioned, at the proper time, for removal from the state to the federal courts, then the cases cited in

its brief would have been applicable; but since no such step has been taken there was nothing to oust the State of its jurisdiction over the cause of action. The case of *Lowry* v. *Chicago, etc., R. Co.* (1891), 46 Fed. 83, relied upon by appellant, was a suit for damages arising from discrimination in freight rates, and the railroad company petitioned for a removal to the federal courts. It was held that since the construction and application of the interstate commerce act was involved, it was a case in which a federal question was raised, and therefore was properly one for removal. The theory of the decision is entirely inconsistent with appellant's contention that the state courts have no jurisdiction whatever over similar cases, for the right of removal is premised on the fact that the state court does have jurisdiction; but, because a federal question is involved, the party against whom such question is raised in such an action has the privilege, at his election, at the proper time, of having such cause removed to the federal court. This must be so, otherwise there would be the anomalous result that a party, by a petition for removal, would avoid what would otherwise be an absolute defense, *i. e.*, want of jurisdiction to an action brought against him in the state court.

The cases pertaining to bankruptcy are not in point in this controversy since, by statute, the federal courts have exclusive jurisdiction of matters in bankruptcy.

The assignment of error in overruling the motion to separate the causes of action stated in the complaint need not be considered, for the reason that even if the motion were improperly overruled it does not constitute reversible error. *City of Huntington* v. *Stemen* (1906), 37 Ind. App. 553; *Board, etc.,* v. *Redifer* (1903), 32 Ind. App. 93; *Brown* v. *Bernhamer* (1902), 159 Ind. 538; *Cargar* v. *Fee* (1895), 140 Ind. 572; §346 Burns 1908, §341 R. S. 1881.

The sufficiency of the complaint is attacked. The objections will be considered in their order.

It is first urged that the complaint does not allege the class of cars demanded, or the destination of the grain. It was averred that appellant was a common carrier of grain, that appellees tendered grain for shipment, and demanded "suitable cars" therefor; that appellant held itself out to be a common carrier to certain cities, naming them, among which number was Baltimore, and that appellees "tendered grain for shipment to the markets aforesaid." There could be no uncertainty, on the part of appellant, as to the class of cars wanted by appellees. When the kind of freight and the destination were made known, and demand made for "suitable cars," appellees had particularized the class as far as they were lawfully required to do. The power to designate the specific cars to be used for these shipments lay entirely with appellant, and it cannot be heard to say that a more exact classification by appellees was necessary.

Appellant also contends that the allegation that it held itself out as a through carrier to the seaboard markets is a conclusion. The objection is not well taken. The averment comes within the well-settled rule that it is not necessary to plead evidence, but that pleading the ultimate fact to be proved is sufficient. *Guenther* v. *Fohey* (1901), 26 Ind. App. 93; *Pennsylvania Co.* v. *Zwick* (1891), 1 Ind. App. 280, and cases cited.

The absence of an allegation that appellant issued bills of lading obligating itself to carry goods to points beyond its own lines is not material to the issues. Such a fact may be material as evidence to support the averment that appellant held itself out as a through carrier to the seaboard, but its absence will not render the complaint insufficient.

The complaint is also attacked for failure to allege payment of the freight on the goods tendered. It was alleged

that the goods were tendered and that appellees were "willing, ready and able to pay" the charges thereon.

The objection will not avail appellant. The action was not for damages for refusing to carry certain specified property. There would be no basis for computing the amount of charges due, since the quantity of grain to be shipped depended entirely upon the number and capacity of cars furnished by appellant. The allegations in reference to charges were sufficient. *Central, etc., R. Co.* v. *Morris* (1887), 68 Tex. 49, 3 S. W. 457, 28 Am. and Eng. R. Cas. 50.

The allegations as to discrimination were also sufficient. *Chicago, etc., R. Co.* v. *Wolcott* (1895), 141 Ind. 267, 274, 50 Am. St. 320. The averments of the complaint were adequate to withstand the demurrer.

As ground for the assignment of error in overruling the motion for a new trial, appellant attacks the sufficiency of the evidence. It is earnestly contended that since the shipper knew that goods were shipped only under appellant's uniform bill of lading, and since such bills of lading expressly limit appellant's liability to its own line, therefore appellees knew that appellant was not bound to carry east-bound goods beyond Pittsburg. It is true that said bills do make such a limitation, but there is nothing therein to indicate the terminus of such line. That must be determined entirely by extrinsic evidence, and if appellant has held itself out to appellees as a through carrier to the seaboard it cannot successfully contend that, although it made such representations, it is not bound thereby, for the reason that, as a matter of fact, its road extends only to Pittsburg. The actual extent of a line of railroad is a fact peculiarly within the knowledge of its owners, and the source of information open to those dealing with such road is almost exclusively the representations made by the agents thereof.

Under the recognized rule, that in determining the suffi-

ciency of evidence this court will consider only the evidence favorable to the matter in dispute (*Lake Erie, etc., R. Co. v. Stick* [1896], 143 Ind. 449; Ewbank's Manual, §46), it is clear that there was evidence from which the jury could well find, as a matter of fact, that appellant held itself out to appellees as a through carrier to the seaboard.

On the question of discrimination, there was evidence to show that appellees were engaged in the same kind of business as those shippers who were located at points where appellant had competition, and who were preferred in the assignment of cars. Appellee's places of business were in close proximity to such competitive points, and their business was conducted in the same manner as that of the alleged preferred shippers. Furthermore, appellees had only one route for shipping their grain, *i. e.*, by appellant's line. They constantly applied for cars during the time of the alleged discrimination. There was sufficient similarity of conditions shown to justify the admission of evidence to prove the number of cars supplied shippers at competitive points.

Since the allegation that appellees were ready, willing and able to pay the freight charges was material, evidence to that effect was admissible

Objection is made also to the rule of damages applied in this case, as well as to the evidence admitted as competent to establish the damage to appellees. The cars requested were for shipments of corn to Baltimore.

The measure of damages for delay in the shipment of goods intended for sale is the difference between the price of the goods at the time they should reasonably have arrived at the point of destination and the price at the time they actually arrived, less the transportation charges. *Michigan, etc., R. Co. v. Caster* (1859), 13 Ind. 164; *Pittsburgh, etc., R. Co. v. Morton* (1878), 61 Ind. 539, 28 Am. Rep. 682; *Bridgman v. Steamboat Emily* (1865), 18 Iowa 509; *Mc-*

*Govern* v. *Lewis* (1867), 56 Pa. St. 231, 94 Am. Dec. 60; 3 Hutchinson, Carriers (3d ed.), §1370.

But the shipper is under a duty so to handle the goods as to reduce the damages as much as possible. He is entitled to have considered, in estimating his damages, the necessary expense to which he was put in thus reducing the damages. *Pittsburgh, etc., R. Co.* v. *Racer* (1892), 5 Ind. App. 209; *Louisville, etc., R. Co.* v. *Flanagan* (1888), 113 Ind. 488, 3 Am. St. 674; *Pittsburgh, etc., R. Co.* v. *Morton, supra; Chicago, etc., R. Co.* v. *Wolcott* (1895), 141 Ind. 267, 50 Am. St. 320; *Shelby* v. *Missouri Pac. R. Co.* (1898), 77 Mo. App. 205; *Fort Worth, etc., R. Co.* v. *Daggett* (1894), 87 Tex. 322, 28 S. W. 525; *Sangamon, etc., R. Co.* v. *Henry* (1852), 14 Ill. 156; *Briggs* v. *New York Central R. Co.* (1858), 28 Barb. (N. Y.) 515.

If then the shipper, in pursuance of his duty to reduce the damages as much as possible, ships the corn to other points and there sells it, the measure of damages would be that applied in this case, *i. e.*, the difference between the value of the corn at Baltimore when it should have arrived there and the actual selling price at the point where the grain was disposed of, with the proper adjustment of the difference in the cost of transportation. The time when the corn was sold was a reasonable time when, if cars had been furnished, it should have been placed on the Baltimore market.

Appellant attacks instructions eight, nine, ten, twelve and thirteen, given by the court at the request of appellees, on the grounds that they are incomplete, uncertain, indefinite and misleading.

It is a well known rule of this court that instructions will be considered as a whole, and if, when taken together, the law is correctly given, the cause will not be reversed, though a single instruction alone might seem to be incorrect. *Cleveland, etc., R. Co.* v. *Penketh* (1901), 27 Ind. App. 210; *Indiana, etc., Gas Co.* v. *Anthony* (1901),

26 Ind. App. 307; *Musser* v. *State* (1901), 157 Ind. 423; *Morgan* v. *Hoadley* (1901), 156 Ind. 320. When it is evident from construing all the instructions together that the jury was not misled, there will be no reversible error therein. *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *Van Camp, etc., Iron Co.* v. *O'Brien* (1902), 28 Ind. App. 152; *Indianapolis St. R. Co.* v. *Hockett* (1903), 159 Ind. 677; *Shields* v. *State* (1897), 149 Ind. 395.

Instruction eight, given at the request of appellees, is attacked for not being made to apply to a given state of facts, but instruction ten sets out a state of facts, and states that the instruction would apply thereto if such facts were found to be true. The latter instruction also enumerates facts which, if proved, would be sufficient to support the finding that appellant held itself out as a through carrier to Baltimore. By instruction three, given at appellant's request, the jury was told that if delivery of the grain at Baltimore was impossible, the carrier was not under a duty to furnish cars therefor, thus supplying that alleged deficiency.

That there was evidence of discrimination to which the instructions pertaining thereto would apply, has been shown. The jury was specifically told, in instruction eleven, requested by appellees, that discrimination was unlawful only when the conditions were similar.

It is urged that instruction nine, requested by appellees, is also open to the objection that the facts to which it would apply are not set forth. But at the request of appellant the jury was told that if Baltimore was not on appellant's line of road, and appellant only offered and undertook to carry corn to the end of its line, it was not liable for failure to transport said corn; and also that there would be no liability for the refusal so to carry unless it was shown by a preponderance of the evidence that appellant was a common carrier to Baltimore, or had expressly or impliedly agreed to carry thereto.

Instruction ten, requested by appellees, told the jury that if appellant's lines extended to Pittsburg, and it maintained traffic arrangements with lines connecting thereat and extending to Baltimore and Newport News, so as to have through transportation, and if appellant during said time held itself out as a through carrier to Baltimore and Newport News, it would be liable for all damages resulting proximately from a failure to carry goods offered in accordance with such representations. In other words, the instruction says that if, as between appellant and other lines connecting at Pittsburg, there was a traffic arrangement whereby appellant could have grain, received on its own lines, transported to said cities without change, but if, as between appellant and those offering goods for shipment, appellant represented and held itself out to be a through carrier to said points of destination, then appellant would be liable for all damages arising proximately from a failure to carry the goods in accordance with such representations. This is a fair statement of the law as applicable to the facts in this case.

The rule of damages laid down in this case in instruction thirteen, given at the request of appellees, conforms with that indicated in this opinion, and there was nothing therein to mislead the jury.

Considering the instructions as a whole, the law as applicable to the facts herein was correctly submitted to the jury. The record in this case is voluminous, and the briefs exhaustive, but a careful investigation of both has failed to disclose reversible error on the part of the court below.

Judgment affirmed.

Rabb, C. J., Comstock, Myers and Hadley, JJ., concur.

Roby, J., absent,

## ON PETITION FOR REHEARING.

WATSON, J.—Counsel for appellant have presented an able and forceful brief in support of their petition for a rehearing in this cause. We have carefully considered the arguments submitted and the additional authorities cited, but are not persuaded that they lead to any conclusion different from that stated in the original opinion.

Appellant insists that the averments of the complaint fail to allege any duty owing by appellant to appellees. With this contention we cannot agree. The averments were, in substance, that appellant was a common carrier, operating lines of railroad to Pittsburg and other points named, but that it held itself out to appellees as a through carrier to Baltimore and Newport News; that by traffic agreements it was able to carry goods through to Baltimore and Newport News without change in transit. This is not a case in which is involved the question of damage by a connecting carrier, and authorities pertaining thereto are not in point.

Under the common law it is the duty of a common carrier to serve the public without partiality and without discrimination. *Chicago, etc., R. Co.* v. *Wolcott* (1895), 141 Ind. 267, 50 Am. St. 320; *New England Express Co.* v. *Maine Cent. R. Co.* (1869), 57 Me. 188, 2 Am. Rep. 31; *Chicago, etc., R. Co.* v. *People* (1873), 67 Ill. 11, 16 Am. Rep. 599; 5 Am. and Eng. Ency. Law (2d ed.), 177. Therefore, if appellant chose to make traffic agreements with connecting lines, and thereby was able to hold itself out to the public as a through carrier to points beyond the termini of its own lines, it must, so long as such agreements continue in effect, afford the same facilities to all shippers along its lines who are doing business under similar circumstances.

It is further alleged in the complaint that shippers in Kokomo, Elwood and Bunker Hill, at which points appellant must compete with other railroads, were furnished cars for

shipping corn to the points to which appellees wished to ship, and that the number of cars so furnished was excessively out of proportion to the number furnished to appellees. The averments of the complaint are, therefore, sufficient to charge appellant with the duty of furnishing appellees with their due proportion of cars to points on its own lines, or to points beyond the termini of the same, to which appellant has held itself out as a through carrier.

The record discloses evidence showing that appellant was guilty of unreasonable discrimination as charged in the complaint. Shippers from the points where appellant had competition testified to the number of cars they received during the period within which the discrimination was charged. They testified further to the fact that during such time, appellant furnished them with cars and transported their corn to Baltimore, Newport News, New York City and other points beyond the termini of its own lines.

This reinvestigation of the questions presented does not reveal any reason for reversing the conclusions reached in the original opinion.

The petition is therefore denied.