Argued at Pendleton May 10, affirmed as modified July 16, 1929.

GEORGE E. HUBBLE ET Ux. *v.* S. W. HUBBLE
ET AL.

(279 Pac. 550.)

182

For appellant there was a brief and oral argument by *Mr. E. O. Stadter.*

For respondent there was a brief and oral argument by *Mr. Ross Farnham.*

McBRIDE, J.—There is no question that S. W. Hubble, at the date of the execution of the mortgage, was the sole owner of the premises. The contest here centers around the lease, which he claims he executed to Hubble's, Inc., on January 1, 1927, for the term of 10 years. The testimony, in respect to this lease, is very conflicting. The lease is introduced in evidence. It is properly signed and bears date of January 1, 1927, and by its terms describes the premises as numbers 1002, 1004, 1006 and 1008 Bond Street, in Bend. Whether these numbers are the numbers of rooms, or street numbers, it is not clear, but the parties seem to agree that they constitute the first floor of the building in Bend owned by S. W. Hubble. The lease provides that as rental, for the term aforesaid, Hubble's, Inc., shall pay to S. W. Hubble the full sum of $18,000 in installments of $150 each on the first day of every calendar month of said term. Failure to keep the provisions of the lease authorizes the lessor to re-enter and assume possession of said premises. Previous to making this lease, Mr. Hubble, the owner of the premises had organized a corporation to be formed August 24, 1926. The stockholders consisted of S. W. Hubble, who subscribed 148 shares, Charles H. Goldsmith, a clerk in the garage, one share, and Charles W. Erskine, another clerk, one share; and the evidence shows that, so far as authority is concerned, S. W. Hubble controlled the whole business.

■ It is claimed, although the lease makes the rental at $150 per month, that, as a matter of fact, it was finally determined that it should be paid up, and, in fact, it was a paid-up lease by giving S. W. Hubble 148 shares in the Hubble's, Inc., company; and that

the rent having been thereby paid, Hubble's, Inc., became the owner of the leasehold. The contesting party here, Mrs. Letitia Hubble, contends that there was no such agreement, but that the Hubble's, Inc., failed to pay the rent and that the lease is forfeited. It was denied in Mrs. Hubble's reply that any such lease ever existed. As before remarked, the testimony is very contradictory, but we are inclined to the opinion that such a change was made from the original terms of the lease and that the rental was in fact paid up by assigning to S. W. Hubble 148 shares of stock in Hubble's, a corporation.

Mr. A. H. Oliver, a witness called by the defendant Hubble's, Inc., and who was in S. W. Hubble's employ as a bookkeeper from January, 1925, to November, 1927, seemed to have been the only witness called who was in a position to know anything about the internal affairs of the corporation, and it was his understanding that the lease was paid up by giving S. W. Hubble 148 shares of the capital stock. From time to time the corporation made a statement of its financial resources and assets with a view of obtaining credit and this lease was always included as one of its assets. It is true that he worked under the direction of S. W. Hubble, the president of the company, but it seems hardly probable that the president of the company, considering the serious legal and criminal consequences which might ensue, would expose himself to the danger of obtaining goods or money under false pretenses.

Mr. R. B. Parsons, an expert bookkeeper and auditor of accounts, and a witness called by the defendant, had been called in another action to examine into the books of Hubble's, Inc., and S. W. Hubble, which books appear to have been destroyed before this trial,

and, while he found them in a state of confusion, he is of the opinion that the lease was treated by Hubble and the corporation as a paid-up lease. S. W. Hubble was not called to explain these matters although his mother was vitally interested in their determination and was the person, if anyone, most likely to know what he would have testified. He probably had been so devious in his business methods that he thought best to absent himself from the scene of his financial exploits.

■ There was an objection to Parson's testimony that it was inadmissible, because the authenticity of the books which he had examined was not clearly proven, but we are satisfied from all the testimony that he did examine the real books of the company, and his opinion as to what they contained was admissible under the circumstances.

■ It has been repeatedly held that where books are voluminous, intricate or uncertain, resort may be had to the testimony of an expert bookkeeper to explain the entries and the true state of the accounts: *Guarantee Co.* v. *Mutual Building & Loan Assn.*, 57 Ill. App. 254; *Chicago etc. R. Co.* v. *Wolcott*, 141 Ind. 267 (39 N. E. 451, 50 Am. St. Rep. 320); *Bartley* v. *State*, 53 Neb. 310 (73 N. W. 744); *Daniels* v. *Fowler*, 123 N. C. 35 (31 S. E. 598).

■ Having come to the conclusion that this lease is genuine and that Hubble's, Inc., have the interest accrued by it, it has a right to be considered in the distribution of the proceeds of the sale if it brings anything above the amount of the mortgage and costs.

The court fixed the value of the leasehold of Hubble's, Inc., at $15,540. The amount of the present rental received, amounts to about $2,500 a year and the testimony is to the effect that even that amount

is liable to be diminished in the future. Out of this the buyer at the mortgage sale will have to pay taxes and upkeep, which will naturally diminish the net revenues from rentals. On the whole, we are of the opinion that the actual value of the leasehold is not greater than $12,000 and fix it at that amount.

■ ■ Counsel for appellant urges that the court erred in setting aside the default against Hubble's, Inc., and permitting it to answer here. Such matters are to a great extent discretionary, and the answer of that defendant, while not technically verified in the manner required by law, was equivalent at least to an affidavit of merits and we cannot say that the discretion of the court was improvidently exercised.

Neither of the parties, Letitia Hubble, nor the Standard Oil Company, has any judgment against Hubble's, Inc., and taking the pleadings as they stand, and in view of the evidence, the order of distribution of the proceeds should be as follows:

First, the proceeds of the sale, or as much thereof as may be necessary, should be applied to the satisfaction of plaintiffs' judgment, and costs and disbursements including costs of sale.

Second, if any sum is left, it should be applied to the extent of $12,000 to the payment of the value of the leasehold interest of Hubble's incorporated.

Third, the judgment of Letitia Hubble, being first in time, should be first in right after the application of the proceeds to plaintiffs' judgment and Hubble's, Inc.

Fourth, the amount remaining, if any, should be applied to the payment of the judgment of the Standard Oil Company of California, and each of the parties should have the statutory right of redemption.

The plaintiffs will be allowed costs of foreclosure

and sale and none of the other parties will recover costs.

In all other respects than those noted, the decree of the Circuit Court is affirmed.

AFFIRMED AS MODIFIED.

BEAN, RAND and ROSSMAN, JJ., concur.