No. 2226.

THE CENTRAL & MONTGOMERY RAILROAD COMPANY v. MORRIS & CRAWFORD.

1. SERVICE OF CITATION.—In a suit against two railway companies, through a local agent, upon whom service of citation is obtained as the agent of both companies, and who is thus described in the petition, a copy of the citation should be left with such agent for each defendant.

2. SAME.—In a suit against several defendants residing in the same county, the procuring of one citation for each defendant, when the statute directs that one citation shall issue for all the defendants, might render the plaintiff liable for unnecessary costs, but could not vitiate the service of citation.

3. VARIANCE.—When a suit is against a defendant as a *railway* company, and the citation commands the sheriff to summon the defendant, described therein as a *railroad* company, the variance is immaterial.

4. APPEARANCE—STATUTE CONSTRUED.—The statute (Revised Statutes, article 1243) which provides that if citation or service thereof are quashed on defendant's motion, he shall be deemed to have entered his appearance at the next term of the court, compels the constructive appearance of the defendant to the merits at the next term, whether his motion be sustained or not.

5. SAME.—If the motion to quash be properly overruled, the defendant is in court from the time of the service; if improperly overruled, and the case is continued, he has obtained all the benefit that could have resulted if his motion had been sustained, and, the error being immaterial, would afford no ground for reversing a judgment afterwards rendered, and no constitutional right of the defendant is infringed thereby.  The rule tends not only to a speedy administration of justice, and the saving of costs in litigation, and should be liberally construed.

6. PLEADING.—In a suit against a railway company for continuous withholding and refusal to furnish facilities for shipping lumber to any place, whereby the entire products of plaintiff's mills, where the lumber was cut, were kept from market and sale, it would seem that an allegation setting forth the points to which it was desired to ship lumber, and a tender and refusal of the freight to such point, need not be averred, since a refusal to furnish facilities for transportation rendered the plaintiff unable to make contracts for delivery.

7. RAILROADS.—A railroad company can not transfer or lease the right to operate its road, so as to absolve itself from its duties to the public, without legislative authority; nor will a lease duly authorized by law release the company from a failure to discharge its charter obligations, unless the law giving the power contains a provision to that effect.

8. RAILROADS—CONSTITUTION CONSTRUED.—Section 5, article 10, of the State Constitution, is a restriction on the power of railroad corporations, and can not be construed as a grant of power to a railroad to lease.

9. SAME—CONTRACT.—A purchase of the property and fránchises of a railroad, under judicial process or under power given in a deed of trust, would work a transfer to the purchaser of its statutory and common law obligations to the public.

10. PLEADING.—In passing upon a general exception, every reasonable intendment arising in the pleading should be indulged in favor of its sufficiency. (See opinion for an application of this rule.)

11. PLEADING—RAILWAY COMPANIES.—In a suit against a railway company for damages caused at a period subsequent to its purchase by another company, it was alleged that the latter company "have, or claim to have purchased" the property and franchises of the former; *held*, on general demurrer, that the reasonable intendment, from the language used, was that the pleader intended to exclude the idea that any such sale as the statutes contemplate, which would have absolved the former road from its obligations to the public, had taken place.

12. NOTICE—JUDGMENT BY DEFAULT.—When in a suit for damages a motion to quash the citation was sustained, and the cause continued, and after the issuance and service of alias citation an amended petition was filed containing the same allegations regarding damages, but more specific, and no new ground of action was alleged, it was not necessary that the plaintiff should have given the defendant notice of the filing of the amended petition before being entitled at the next term to judgment by default.

13. DAMAGES—PLEADING.—In an action against a railroad company to recover damages caused by its continuous failure to furnish transportation for freight, it is sufficient, in alleging a basis for damages, to charge what could have been realized from sales if transportation had been furnished, and the loss which resulted from being compelled to keep it at a point where it could not be sold, with a specific statement of the expenses incident to its detention.

14. TRIAL BY JURY.—At common law, when a judgment was rendered by default and the suit was not on a liquidated demand, the damages were assessed by a jury. This right of trial by jury is in effect protected by the fifteenth section of the Bill of Rights, and can not be destroyed by legislative enactment.

15. RIGHT OF ACTION.—When a cause of action exists against two railroad companies for an act or omission for which they are severally liable, and suit is brought against both, the plaintiff may at his option dismiss as to either, and prosecute his suit against one of them alone.

ERROR from Montgomery county. Tried below before the Hon. James Masterson.

The opinion states the case.

*Ballinger, Mott & Terry,* for plaintiff in error:  On their prop-
osition that where a judgment by default is rendered on a pe-
tition which, assuming all its allegations to be true, does not
state a good cause of action, such judgment will be reversed,
they cited Hall v. Jackson, 3 Texas, 305; Johnson v. Davis, 7
Texas, 173; Hallock v. Jaudin, 34 California, 167; Abbe v. Marr,
14 California, 210; Barron v. Frink, 30 California, 486; Camp-
bell v. Jones, 38 California, 501; Childress v. Mann, 33 Alabama,
206; Dryden v. Dryden, 9 Pickering, 546.

On their proposition that the allegations will be taken most
strongly against the pleader and the allegations of the petition,
showing that the road, franchises, and all the property of plain-
iff in error had been purchased by the Gulf, Colorado & Santa
Fe Railway Company, and were owned and operated by it, that
company alone was liable for the damages claimed, and the
judgment against plaintiff in error was unauthorized by the
petition, they cited Indianola Railway v. Fryer, 56 Texas, 609.

On their proposition that the facts alleged in the petition show
that the existence of the Central & Montgomery Railroad Com-
pany was merged into and consolidated with the Gulf, Colorado
& Santa Fe Railway Company, and that there was no such legal
entity in existence as the Central & Montgomery Railroad Com-
pany against which judgment could be rendered, and the judg-
ment being against a defunct corporation, should be reversed,
they cited Indianola Railway v. Fryer, 56 Texas, 609.

On their proposition that to state a cause of action the petition
must show between what places the defendant was a common
carrier, and that the freight was tendered or offered for trans-
portation to some place to which the defendant, under its charter,
was bound to carry—to some place to which the defendant was a
common carrier, they cited Edwards on Bailments, sections 655–
657; Revised Statutes, article 4226; Angell on Carriers, sections
124 and 356; Schouler on Bailments, 354 to 362; Lane v. Cotton, 12
Mod., 484; Delade v. Northeastern Railway, 15 C. B., N. S., 680;
Citizens Bank v. N. S. Co., 2 Story, 49; Railway v. Morton, 61
Indiana, 539; People v. Railway, 55 Illinois, 84; Thurman v.
Wells, 18 Barbour, 500; Couch v. Railway, 34 E. L. & E., 573.

On their proposition that the original petition states no cause
of action and is fatally defective because it does not show that
plaintiffs tendered to defendant, or were ready and willing to
pay its legal charges or freight money on any lumber offered it
for transportation, they cited Revised Statutes, article 4226; An-

gell on Carriers, sections 124, 418; Schouler on Bailments, 556;
Edwards on Bailments, sections 655, 657, 518.

On their proposition that where the original petition is fatally
defective, showing no cause of action, and is insufficient to sus-
tain a judgment by default, such defects can not be cured, where
the defendant has made default, by an amended petition as to
which the defendant has had no notice and no service of citation
or process, they cited Revised Statutes, articles 1192, 1193; Hutch-
inson v. Owen, 20 Texas, 287; King v. Goodson, 42 Texas, 152;
Morrison v. Walker, 22 Texas, 18; St. Louis, etc., Railway v.
McReynolds, 24 Kansas, 368; Leavenworth, Lawrence & Gal-
veston Railway v. Van Riper, 19 Kansas, 317.

On their proposition that where a carrier refuses transpor-
tation, the measure of damages is the difference between the
market value of the lumber at the destination to which it was
tendered for carriage at the time it should have arrived (had it
been accepted for transportation) and its market value at the
same time at the place where it was tendered for carriage, less
the freight money which would have been paid to the carrier
had the lumber been transported, they cited Angell on Carriers,
section 490, a new case; Sutherland on Damages, volume 3, 206
to 213; Hutchinson, section 774; Bridgman v. Steamboat Emily,
18 Iowa, 509; Brackett v. McNair, 14 Johns, 170; McGovern v.
Lewis, 56 Pennsylvania State, 231; Armory v. McGregor, 15
Johns, 24; Bell v. Cunningham, 3 Peters, 69; The Cassius, 2 Story,
81; Railway Company v. Morton, 61 Indiana, 539; Galena &
Chicago Railway v. Rae, 18 Illinois, 488.

On their proposition that the court erred in granting a writ of
inquiry and in empaneling and allowing a jury to assess the
damages, and erred in rendering judgment on the verdict of the
jury, because after default no jury being demanded by this de-
fendant, it was the province and duty of the court to assess the
damages, the verdict of this jury is unauthorized by law,
illegal and insufficient to support the judgment, they cited Re-
vised Statutes, articles 1284, 1285, 1286, as compared with Pas-
chal's Digest, article 1508.

On their proposition that the service of the first citation was
fatally defective because the sheriff's return does not show that
a copy of it was delivered to each defendant, and further, be-
cause the same was not served on an agent of plaintiff in error,
they cited Revised Statutes, article 1219; Roberts v. Stockslager,
4 Texas, 307; Burleson v. Henderson, 4 Texas, 49.

On their proposition that the service of the alias citation was fatally defective because:

First. A separate alias citation was issued to each defendant to the same county, when the statute only authorized the issuance of one.

Second. The sheriff's return does not show that a copy of the alias citation was delivered to any one as the agent of the plaintiff in error.

Third. Service, if any, of such alias citation was made on a person who, as the record shows, was never the agent of plaintiff in error, they cited Revised Statutes, articles 1213, 1219; Willis v. Bryan, 33 Texas, 429; Rodgers v. Green, 33 Texas, 661; Thompson v. Griffis, 19 Texas, 115; King v. Goodson, 42 Texas, 152.

On their proposition that an appearance by a defendant to move to quash the service on the ground that the sheriff's return is false, and that the service was not made on defendant or any agent upon whom service is authorized, is not a voluntary appearance and not sufficient to support a judgment by default in the absence of any legal service, Revised Statutes, article 1243, in so far as it may apply to such a case, is in conflict with section 19 of the Bill of Rights of the Constitution of Texas, and with section 1 of the United States Constitution. The citation was not quashed on motion of plaintiff in error, and the Revised Statutes, article 1213, does not apply, they cited Revised Statutes, article 1243; Bill of Rights, State Constitution, section 19; Fourteenth Amendment United States Constitution, section 1; Cooley's Constitutional Limitations, 498, 435.

*Hutcheson, Carrington & Sears,* for defendant in error: On their proposition that the amended petition did not state a different cause of action from the original petition, nor are its allegations materially different. Merely stating the same cause of action more specifically, or in different language, is not such a change as to render the case on which the default was taken a different one from that which the defendant was cited to answer, they cited Perkins v. Wood, 63 Texas, 396, 398; 26 Texas, 612; 11 Texas, 291.

On their proposition that the allegations of the petition do not show that it was the duty of the Gulf, Colorado & Santa Fe Railway Company, and not the duty of the Central & Montgomery Railroad Company to supply transportation. Nor do they

show either such a purchase, merge or consolidation as would exempt the Central & Montgomery from liability; either might well be liable without impairing the obligation of the other, they cited Revised Statutes, articles 4226, 4227; Abbott v. Horse Railroad Company, 80 New York, 27; Ohio & Mississippi Railway Company v. Dunbar, 20 Illinois, 624; 1 Redfield on Railways, paragraph 142, pages 588, 589.

The original petition states in substance, on the points embraced in these propositions, the same thing that is stated in the amendment. It makes and states the same cause of action, the amended petition being a mere enlargement and more specific treatment of the cause of action first set out. The judgment is rendered upon the amended petition upon the same cause of action originally sued on. No other relief is sought than that asked in the original petition; they cited Woods v. Perkins, 61 Texas, 39; Thouvenin v. Lea, 26 Texas, 612; Ward v. Lathrop, 11 Texas, 291.

On their proposition that the consent of the Central & Montgomery Company to the operation of its road by its co-defendant could not exonerate it from liability for the violation of its charter duties and obligations to plaintiffs, they cited Boone's Law of Corporations, paragraph 268, notes 8 and 9; 1 Redfield on Railways, paragraph 142, pages 588, 589; Railroad Company v. Brown, 17 Wallace, 445, 451; 80 New York, 27-30; Nelson v. Vermont & Canada Railroad, 26 Vermont, 717; 49 Georgia, 355.

On their proposition that the special damages set out were all pleaded as the immediate consequence of the wrongful acts of the railroad companies, and it was expressly charged that they knew and contemplated the consequences of their acts, they cited Revised Statutes, article 4227; Field on Damages, paragraphs 375, 384, 390.

On their proposition that the rule invoked and cases cited by opposing counsel, as to the measure of damages for the refusal by a carrier of transportation, is only applicable to a distinct shipment, offered at a distinct time, in a definite amount, and from and to distinct points. It has no application to a case like this. Our statute, cited above, is that the carrier shall pay to the aggrieved party all damages which shall be sustained by its action, they cited Ricks v. Pinson, 21 Texas, 508; Trabue v. Stonum, 20 Texas, 454; Freiberg v. Lowe, 61 Texas, 436; 59 Texas, 349; 23 Texas, 65.

On their proposition that a finding of any amount within the limit of that sued for will be presumed to be right. If sustained

by the pleading, the verdict is clothed with the conclusive pre-
sumption of the fullest proof.   Where the proof sustains the
verdict, an error in the charge as to the measure of damages
becomes immaterial.   It can not be told upon what item of dam-
ages the jury based their finding, nor upon how much of each
item; they cited Houston, East & West Texas Railway Company
v. Hardy, 61 Texas, 232; Galveston v. Morton, 58 Texas, 416;
King v. Bremond, 25 Texas, 637.

On their proposition that all objections to the citation were
conclusively answered by the fact that, on the statement of
plaintiff in error itself, its motion to quash was overruled, and
to this judgment of the court below there was taken no bill of
exeptions, but on the contrary the Central & Montgomery en-
tered its appearance at the September term, 1883, they cited
Revised Statutes, article 1241; DeWalt v. Snow, 25 Texas, 320.

GAINES, ASSOCIATE JUSTICE.   This suit was brought in the first
instance by Morris & Crawford against the Central & Mont-
gomery Railroad Company and the Gulf, Colorado & Santa Fe
Railway Company, to recover damages for a failure by the de-
fendants to transport the lumber of plaintiffs on demand.   The
original petition was filed January 9, 1883.   At the first term of
the court the cause was continued by operation of law; at the
second term, as upon "affidavit of defendant" (but of which
defendant the record does not disclose); and at the third term
the suit was dismissed as to the Gulf, Colorado & Santa Fe Rail-
way Company, and judgment by default taken against the
Central & Montgomery Company for want of an answer.   That
company now brings the case to this court by writ of error.

We shall discuss only the controlling questions in the case,
and in doing so shall not observe the order of the assignments
laid down in the brief for plaintiff in error.

The eighth assignment is that "the court erred in rendering
judgment against this defendant, because the record shows no
legal service of citation or process on this defendant."   At the
first term of the court there was a motion to quash the citation
by each of the defendant companies.   That of the Gulf, Colorado
& Santa Fe Company was sustained.   The motion of the other com-
pany was overruled, and an exception taken by it and noted on
the record.   The cause was thereupon continued by operation of
law.   On the fifth of May, 1883, two alias citations were issued,
which are copies of each other, except that in one the sheriff is

commanded to "deliver to the defendant, the Central & Montgomery Railroad Company, or their local agent at Montgomery, one R. A. Messick, a true copy of this citation;" in the other, in the corresponding part of the writ, the name of the other defendant company is used. The sheriff's return is the same upon each citation, and is to the effect that he executed it "by delivery to R. A. Messick, at his office, during office hours, in the town of Montgomery, as local agent in Montgomery, Montgomery county, Texas, of the within named defendants, in person, a true copy of this writ." The petition alleged that Messick was the agent of both companies, and it would seem to us in such case that, although the citations may be exactly the same, a copy for each of the defendants should be left with such agent. It is reasonable to presume that the law contemplated that the agent should transmit the copy served upon him to his superiors, and therefore a writ for each would be necessary for the purpose. Now, if the alias citations which were issued had been identical in language throughout, the sheriff's return would have admitted of the construction that he had delivered but one copy, because a copy of the one would have been a copy of the other. But in this case there is a distinctive difference between the two citations actually issued; so that by the return indorsed upon each, that a copy of "this writ" had been delivered to the agent, we know that a copy of the citation for each defendant was served upon the agent. This would seem to be sufficient. The fact that one citation issued for each defendant, when the statute directed that one should issue for all the defendants living in the same county, might render plaintiff responsible for the additional costs, but would not render the service void. (See Thompson v. Griffis, 19 Texas, 115.) The alias citation directed the sheriff to serve Messick as agent of defendant, the Central & Montgomery Company. The return described him as agent of both defendants. The agency having been averred in the petition, and the agent to be served being expressly named in the citation, we do not see that anything more was necessary to appear in the return than that the sheriff had delivered a copy of the writ to the person whom he was directed to serve. It is also urged that the citation is defective because it commands the sheriff to summon the Central & Montgomery Rail*way* Company, whereas the petition is filed against the Central and Montgomery Rail*road* Company. It has been decided by this court

that such a variance is immaterial.  (Galveston, Harrisburg & San Antonio Railway Company v. Donohoe, 56 Texas, 162.)

But let it be conceded, for the sake of the argument, that the alias citation and service upon the alleged agent were not good. At the first term of the court the plaintiff in error moved to quash the service upon it, and its motion was overruled.  The statute merely provides that if the service or citation is quashed upon motion of the defendant he shall be deemed to have entered his appearance to the succeeding term of the court.  (Revised Statutes, 1243.)  The result of this rule is that, whenever he appears and moves to quash the service, he is considered as having appeared to the merits of the next term, whether his motion be sustained or overruled.  If properly overruled, he is in court from the time of the service.  If improperly overruled, and the cause be continued, he is not prejudiced by the action of the court, for the reason that the continuance is the only advantage he would have obtained if his motion had been granted. The error in such case is immaterial, and is not a ground for a reversal of the judgment.  It is the option of a defendant who thinks he is not duly served with process either to move to set it aside or to appeal from the judgment should one be rendered against him.  There is no compulsion upon him to pursue the former course.  Should he see proper to do so, it is not seen that the Legislature has infringed any of his constitutional rights by declaring in effect that his appearance to quash the writ or service shall at all events be deemed a good appearance for the next term should the cause be continued.  The statute is a salutary one.  It tends to the speedy disposition of causes, to the saving of costs, is conservative of the rights of the parties, and should be liberally construed and applied.  We are of opinion, therefore, that plaintiff in error was properly in court, so far as the original petition was concerned.

But, after the cause was continued at the first term, and after the issuance and service of the alias citation, an amended original petition was filed.  It is now contended that the amendment was such as required notice to defendant before judgment by default could be rendered upon it.  It is expressly urged that the original petition showed no cause of action against plaintiff in error, and that when such is the case the defendant should be served with notice of any amendment, which makes the petition good.  When no cause of action is set up it would seem that the defendant might well conclude the court would

not render judgment upon the petition, and therefore give himself no further concern about the case. Hence it is to be inferred that he ought not to be required to take notice of any amendment to it, but that new process should issue. But we do not feel called upon to decide that question, because we are of opinion that the original petition in this case did show a cause of action.

It is alleged that both of the defendant companies were corporations organized under the laws of the State, and were common carriers; that the Gulf, Colorado and Santa Fe Company, about June, 1882, took control of the road and property of the Central & Montgomery Company under a purchase, or claim of purchase, and had since operated the road; that during the season plaintiffs had delivered large quantities of lumber at the depot and demanded transportation, which had been refused, and closed with very specific allegations of damages. It is urged, among other things, that the points to which the lumber was to be carried, and the tender of the freight upon it should have been averred. In an ordinary case it may be that these allegations are proper and necessary, but here the complaint is not of damage, by reason of a failure to carry any specific lot of lumber, but it is for the continued withholding and refusal of facilities for shipping lumber to any place, whereby almost the entire product of plaintiffs' mills were kept from market and sale. Plaintiffs, under the circumstances, could make no contracts to deliver because they could not get the necessary transportation, and hence could not have averred the points to which it was to have been carried. The reason for the refusal of transportation is alleged to be that the Gulf, Colorado & Santa Fe Company desired that the lumber should accumulate until they completed a junction between their road and the other defendant, so that it would earn the profit on the transportation beyond the proposed point of connection. This shows that the refusal to carry was not on account of the non-payment of freights, and we think, therefore, a tender was not necessary to be alleged.

A more serious question is, whether the allegations of the petition do not show that whatever liability accrued was that of the Gulf, Colorado & Santa Fe Company only. In order to set forth a cause of action against both defendants, the original petition averred that "the Gulf, Colorado & Santa Fe Railway Company, and its officers and agents, 'have, or claim to have, purchased, own and operate and control the defendant (Central

& Montgomery Railroad), and have taken charge of, and are exercising ownership over, all its property and effects, and undertaken to perform its functions, and operate its franchises.'"

It is well established that a railroad company can not transfer or lease the right to operate its road, so as to absolve itself from its duties to the public, without legislative authority. Nor will a lease duly authorized by law release the company from a failure to discharge its charter obligations, unless the law giving the power contains a provision to that effect. (Abbott v. Horse Car Company, 80 New York, 27; Ohio & Mississippi Railroad Company v. Dunbar, 20 Illinois, 623; Nelson v. Vermont & Canada Railroad Company, 26 Vermont, 717; Macon & Augusta Railroad Company v. Mayes, 49 Georgia, 355; Railroad Company v. Brown, 17 Wallace, 445; Illinois Central Railroad Company v. Bowen, 5 Wallace, 90; 1 Rorer on Railroads, 605, et seq.; 1 Redfield on Railways, chapter 22, page 616, star page 587; Pierce on Railways, 283, 496.)

We have not found any law in this State which confers upon a railroad the power even to lease its road. Section 5 of article 10 of the Constitution provides that no railroad corporation, nor the lessees of such corporation, shall consolidate with any other having a parallel or competing line. This is, however, a restriction upon the power of such corporations, and is not to be construed as a grant of authority to lease. A similar provision in the statute of New York was held by the Court of Appeals of that State not to authorize a lease. (Abbott v. Horse Car Company, 80 New York, supra.)

But a purchase of the property and franchises of a railroad company may take place under judicial process, or the power given in a deed of trust, which we have no doubt would work a transfer to the purchaser of its statutory and common law obligations to the public. (Revised Statutes, article 4260, et seq.) The words just quoted from the original petition, "have, or claim to have, purchased," are consistent with the idea of such a transfer, and it is probable that if the clause in which they appear stood alone we would be bound to give them a construction least favorable to the pleader. But the rules of practice laid down by this court for the government of the district courts provide that in passing upon a general exception every reasonable intendment arising upon the pleading excepted to, shall be indulged in favor of its sufficiency. (47 Texas, 619, rule

17.) Taking all the allegations of the petition together, and especially those averring the continued existence of the Central & Montgomery Company as a common carrier, we think the reasonable intendment is that the pleader sought to exclude the idea that any such sale as the statutes contemplated had taken place. We are of opinion, therefore, that the original petition sets forth a cause of action good upon general demurrer.

The amended petition sets up substantially the same facts as originally pleaded by the plaintiffs. The allegations of damages are admitted by counsel for plaintiff in error to be almost identical in language, and the same in substance in both pleadings. The averments of the latter are more specific, but no new ground of action is alleged. It was not necessary, therefore, that defendant should have notice of the filing of the amended petition, in order to authorize the court, upon demand of plaintiffs, to proceed to judgment.

The fourth assignment is that "the court erred in rendering judgment against this defendant, because plaintiffs' first amended orignal petition does not state any legal or intelligent basis for estimating the damages. It does not allege to what place or places the lumber was tendered for transportation, or the market value of the lumber at such place or places at the time when the lumber would have arrived had defendant transported the same when tendered, and does not allege the market value of the lumber at Montgomery at the time the same was tendered for transportation."

It seems to us that the damages are properly alleged. The action was brought not on account of any one specific failure to transport any one lot of lumber. In such a case the difference between the price of the lumber at the point of departure and the price at its place of destination, less the freight, is the proper measure. But here was a case of a continuous failure to carry the lumber as demanded. Plaintiffs could not have contracted to deliver at any point for the want of facilities of transportation. What could have been realized upon the lumber if transportation had been furuished, and the loss which accrued by reason of its having to be stacked at a place where it could not be sold, and all the incidental expenses, are very specifically stated.

The fifth assignment is that "the court erred in rendering judgment for the plaintiffs, because its charge to the jury contains no intelligible rule for measuring the damages. The court

erred in charging the jury that 'the measure of damages was the difference in value of such lumber so offered at such places at the time of such offer for shipment and the fair and reasonable market value thereof at the time and place for which it reasonably ought to have transported it,' because such charge is insensible and gave the jury no intelligent rule."

This charge is clearly erroneous by reason of some clerical misprision, as must be presumed. This is however an error to the prejudice of plaintiffs, and not of defendant; and hence the latter can not complain. Taking the whole of the instructions together, they were altogether favorable to the railroad company. If not full, defendant should have been present by counsel and asked special instructions. It can claim no immunity from the ordinary rule of practice by reason of its failure to appear and make defense to the action. Without a statement of facts, we can not say there is any error in the charge by which the defendant was prejudiced.

The seventh and ninth assignments of error raise the same question. We copy the latter. "The judgment is erroneous and illegal, because rendered on the verdict of a jury assessing plaintiff's damages, when, under the law, the court was required to assess the damages, and because the damages were never assessed by the court."

The Revised Statutes, articles 1284, 1285 and 1286, provide for a jury for defendants in case judgment is rendered by default, but do not expressly give this privilege to the plaintiff. These enactments are certainly peculiar. After default, the defendant may demand a trial by jury, even upon a liquidated demand— though we are at a loss to determine what function the jury can be called upon to perform in such case. We are of opinion, however, that under the course of procedure at common law, when a judgment was rendered by default, and the cause of action was not liquidated, a jury was always called to assess the damages. If this be so, the right is preserved by fifteenth section of our bill of rights, and can not be infringed by any act of the Legislature. In a very numerous class of cases, the amount of damages is the important question to be determined, and the one in which plaintiffs have the greater interest in a trial by jury. The plaintiffs in this case had, at a term before that at which the judgment was rendered, demanded a jury and paid the fee therefor. We think that they were entitled to have the damages

assessed by a jury, and that the court did not err in extending to them this privilege.

We are of the further opinion that the court did not err in dismissing as to the Gulf, Colorado & Santa Fe Railway Company. The petition did not allege any joint obligation to plaintiff on part of the two defendants. It claimed that, by reason of the facts and the relations between the defendants, it had a claim against both. If the facts stated in the petition are true, they had the right to proceed against either in a separate action.

There is no error in the judgment, and it is affirmed.

*Affirmed.*