HOUSTON, EAST & WEST TEXAS RAILWAY COMPANY v.
C. H. ANDERSON ET UX.

No. 5326. Decided March 18, 1931.
(36 S. W., 2d Series, 983.)

*Baker, Botts, Parker & Garwood, Harrison & Watson* and *Arterbury & Coolidge* and *Davis & Davis,* for appellant.

It being unquestionably the prerogative of the United States to legislate concerning interstate carriers and to authorize one interstate carrier to lease its equipment to another as was done in this case, it is idle to say that the Houston, East & West Texas Railway Company must, in order to obtain legal authorization for the lease, receive the legislative sanction for the act from the state of Texas. Such a position means, in effect, that though the Interstate Commerce Commission has been empowered by Congress to deal with interstate carriers in the particular involved in this case, the authorization for the lease by the Interstate Commerce Commission is of no force and effect unless and until it is approvd by the state of Texas. Such contention reverses the order of things and makes the legislation of the state supreme and the act of the United States of no force and effect even though the subject matter involved lies in a sphere of jurisdiction surrendered by the states and given by the federal constitution to the United States.

*S. P. Jones* and *Franklin Jones* and *Anderson & Lewis,* for appellee.

If a railroad company can relieve itself of liability to the traveling public by leasing its road to a solvent lessee, it can do so by leasing it to an insolvent lessee, for the *power* to relieve itself of liability would control and not the kind of particular lessee substituted by it and tendered to the public in its stead.

Recognizing these fundamental principles, the Texas courts have universally held that a railway company not only could not without legis-

lative authority lease its road and relinquish operation thereof, but also that even if there were legislative authority for the leasing of a road, that nevertheless in the absence of legislative provisions expressly exempting the lessor company from liability, it would remain liable for the operation of the road by the lessee company. In a spirit of overcautiousness, we digest briefly the great number of cases which have established the announced doctrine. Central & M. Ry. Co. v. Morris, 68 Texas, 49, 3 S. W., 457; Woodhouse v. Rio Grande Ry. Co., 3 S. W., 323; M. P. Ry. Co. v. Dunham, 4 S. W., 472; M. K. & T. Ry. Co. v. Owens, 75 S. W., 579, and others.

A careful reading of section 8567, par. 2 of U. S. Compiled Statutes Title 49, sec. 5, par. 2, U. S. Code, will illustrate that the Interstate Commerce Commission is empowered to do no more than to authorize and approve the acquisition of the physical property of one railroad by another. It cannot create in a corporation a *power* denied it by the political body granting it a franchise. As this court well knows, the Interstate Commerce Commission is a mere administrative body, the orders and proclamations of which are subject to judicial review; and if unsupported by the evidence given at the hearing, or contrary to the law of the land will, of course, be held for naught. White v. Hart, 13 Wallace, 646; McCulloch v. Maryland, 4 Wheat, 316.

Mr. Presiding Commissioner HARVEY delivered the opinion of the court.

This suit was brought by the defendants in error, C. H. Anderson, and his wife, Laura Anderson, against the plaintiff in error, the Houston, East & West Texas Railway Company, to recover damages resulting from personal injury to Laura Anderson as hereinafter shown.

The plaintiff in error is a Texas corporation, and prior to March 1, 1927, owned and operated a line of railroad extending from Houston, Texas, to Shreveport, Louisiana. Goods and passengers were transported, both interstate and intrastate, over said railroad. On the date named, the plaintiff in error delivered the possession and control of all its properties, including its railroad and equipment, to the Texas and New Orleans Railroad Company, under a lease duly executed to the latter company by the plaintiff in error; which lease had theretofore been duly authorized by the Interstate Commerce Commission. Neither the lease nor the order of the Commission authorizing it, specifically provides for the exemption of the lessor from responsibility for the further operation of the leased properties. The Texas and New Orleans Railroad Company, under the terms of the lease, took exclusive possession and control of the railroad and has exclusive control of all matters pertaining to its operation. In May, 1927, Laura Anderson, while travelling from Houston to Shreveport, as a passenger on the train of the last named company, was caused to suffer great mental anguish as a result of insulting and threatening

language addressed to her by the conductor of the train, who was an employee of the lessee. Damages for this injury are sought to be recovered from the plaintiff in error. The trial court rendered judgment in favor of the defendant in error against the plaintiff in error for damages in the sum of $2,000. The Court of Civil Appeals has affirmed that judgment. 10 S. W. (2d) 767.

The only question before us goes to the liability of the plaintiff in error for the wrong done Laura Anderson. An examination of this question requires a consideration of the legal effect of the above mentioned lease, with reference to the liability to which the plaintiff in error is sought to be held.

The power to authorize the lease of the railroad of a state chartered corporation, which railroad is being operated in interstate commerce, and to exempt the lessor from responsibility for the performance of charter obligations during the lease term, is possessed by the Congress of the United States; and this power, when exercised, predominates. The obligations arising under the charter are subject to this paramount authority, which inheres in the federal government as an incident to its power over interstate commerce. Colorado v. U. S., 271 U. S., 153.

Authority in this respect has been delegated by Congress to the Interstate Commerce Commission. 44 U. S. Stat. at Large, part 1, title 49, sec. 5. The action of the latter body in approving the lease in question here, has the force of legal authority. Colorado v, U. S., supra.

It is contended, however, that unless a lease which is authorized by the Commission, or the order granting authority to make the lease, specifically provides for exemption of the lessor from such liability, the latter becomes liable for the torts subsequently committed by the lessee in operating the leased properties. Judicial expressions in our state touching the question, are not entirely satisfactory. In Missouri Pacific Railroad Company v. Watts, 63 Texas, 549, there is a general holding to the effect that where the lease of a railroad is authorizd by law, the lessor is discharged from responsibility for the lessee's torts. As to the decisive effect of that holding on this particular question, we shall not undertake to determine. In the cases of Railway v. Underwood, 67 Texas, 589, 4 S. W., 216, and Railway v. Morris, 68 Texas, 49, 5 S. W., 457, there are expressions relating to this question, which appear to be conflicting, but since in each of those cases an unauthorized lease was involved, such expressions are not authoritative. With regard to the lessor remaining liable, in the respects mentioned, where no exemption is expressed, the decisions of other courts are not in accord. But most, if not all, of those decisions occur in cases where the owner company held general statutory authority to lease its railroad. The view that, in such a case, the lessor is not liable for the lessee's torts is maintained by the following authorities: Arrowsmith v. R. R. (C. C.), 57 Fed. Rep., 165; Hayes v. R. R.,

74 Fed. Rep., 279; Mahoney v. R. R., 83 Me., 68; Pinkerton v. Traction Co., 193 Pac. St., 229; Miller v. R. R., 125 N. Y., 119; Heron v. R. R., 68 Minn., 542; Carruthers v. Ry., 59 Kan., 629, 54 Pac., 673; Ry. v. Curl, 28 Kan., 622; Mooreshead v. Ry., 203 Mo., 121, 96 S. W., 261 (affirmed in 100 S. W., 611).

Regardless, however, of what may be the true rule where the lease is made in pursuance of general authority in the matter, we believe that where the Interstate Commerce Commission, in the exercise of the powers confided to it, has specifically authorized the owner company to lease its railroad to a particular lessee for the purpose of operation, and there is no language in the order or the lease implying a reservation of the former company's liability, the presumption should be indulged that a transfer of responsibility for the performance of the charter obligations respecting matters of operation was intended by all parties concerned. For in such a case, the commission, as representative of the public, is afforded the opportunity to determine as to the trustworthiness of the proposed lessee, and to safeguard the interest of the public. The very fact that the commission approved the lease in question here strongly implies the consent of the Commission to the operation of the railroad by the Texas and New Orleans Railroad Company upon that company's responsibility exclusively. Exemption of the plaintiff in error from liability in matters pertaining to operation of the road sufficiently appears.

The judgment of the trial court and that of the Court of Civil Appeals should be reversed, and judgment should be here rendered for the plaintiff in error.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.