**Guy A. THOMPSON, Trustee, New Orleans, Texas & Mexico Railway Company, et al., Appellants,**

v.

**Parris SINKLER, Appellee.**

No. 6002.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 1, 1956.

Rehearing Denied Nov. 28, 1956.

**510**

Woodul, Arterbury & Wren, Hutcheson, Taliaferro & Hutcheson, Houston, for appellants.

Kelley & Ryan, Smith & Lehmann, Houston, for appellee.

WALKER, Justice.

Sinkler, the plaintiff in this action, was an employee of the several railroad corporations represented on this appeal and as defendants below by the trustee. Plaintiff served as a cook on the car used by an officer of said railroad corporations in the performance of his duties. This car, with plaintiff on board as cook, was brought into the Union Depot at Houston, apparently by one of the trustee's corporations, the St. Louis, Brownsville & Mexico Ry. Co., as one of a train of cars, and later that day, with plaintiff again on board and again engaged in performing his duties, was moved to another track at this station. This movement was made by employees and property of the Houston Belt & Terminal Railway Company. During the course of the movement, the engineer failed to comply with a signal given him by another member of the switching crew, and in consequence the plaintiff's car was driven against another car with heavy force and the plaintiff was thrown against a part of his own car and injured. The plaintiff subsequently brought this action against the trustee under the Federal Employers' Liability Act, namely, Sections 51 et seq., Title 45 U.S.C.A. to recover damages for these injuries, and no question has been raised concerning the application of this statute to the case. The Houston Belt & Terminal Railway Company was not a party to the suit. The cause was tried to a jury and on the jury's verdict the trial court rendered judgment for the plaintiff against the trustee for $15,000. The trustee was sued as the representative of five railroad corporations and was adjudged not liable in the case of two. He was adjudged liable as trustee of the other three, the New Orleans, Texas and Mexico Railway Company, the Beaumont, Sour Lake & Western Railway Company and the St. Louis, Brownsville, and Mexico Railway Company. From the trial court's judgment the trustee has appealed.

The Houston Belt & Terminal Railway Company was at the time of the plaintiff's injury and still is a corporation, separate and distinct in form from the various railroad corporations represented by the trustee. The plaintiff was injured on the Belt's track, its property, and his injury, as our statement shows, was caused by the Belt's employees. These employees, again, were subject to, and only to, the direction and control of the Belt's officers and were switching the plaintiff's car pursuant to a contract between the Belt and the corporations represented by the trustee which purported to make the Belt an independent contractor for the purpose, among other matters, of and while switching cars, including the plaintiff's car, of the other parties. It appears, therefore, that the trial court's judgment is erroneous and must be reversed unless the Belt actually was not an independent contractor or unless the Belt's status as an independent contractor is not material.

It is contended by the plaintiff under his second counter-point that the Belt was a separate corporation in form only and being so, was no more than an agent of the trustee's corporations for whose negligence the trustee would now be liable. And in response to Issue 3, the jury found that in switching the plaintiff's car the Belt was "acting as agent" for the trustee's corporations adjudged liable, and in response to Issue 4, found that a preponderance of the evidence did not show that the Belt was an independent contractor in switching the plaintiff's car. The trial court defined "agent", in part, as one, the details of whose work was subject to his principal's control, and defined "independent contractor", in part, as one, the details of whose work was not subject to his employer's control.

The defendant contends that these findings are without support in the evidence.

The evidence shows that the Belt, a Texas corporation, received its charter in 1905 and that all of its stock was subscribed by four railroad corporations, each subscribing for 25% of the whole. Two of these, namely, the Beaumont, Sour Lake & Western and the St. Louis, Brownsville & Mexico, were adjudged liable to the plaintiff as we have stated, and by the trustee are appellants here. The other corporation adjudged liable to plaintiff, namely, the New Orleans, Texas & Mexico, has never owned any of the Belt's stock but does own all, or approximately all, of the stock of the two corporations just named. Another of the subscribing corporations, the Gulf, Colorado & Santa Fe Railway Company, continues to own its original stock; but the stock subscribed by the fourth company, the Trinity & Brazos Valley Railroad Company, was owned at the time of the plaintiff's injury by two other railroad corporations which were a part of the Rock Island System. These were The Fort Worth & Denver and the Chicago, Rock Island and Pacific. The plaintiff does not question the legality of the Belt's incorporation or the right of the proprietary lines to own the Belt's stock.

■ The proprietary lines have exercised their right as stockholders to elect the Belt's board of directors. When the plaintiff was hurt, this board had eight members and each of the proprietary lines (treating the Rock Island lines as one) had elected two members of this board. All of these directors were officers of, or were affiliated in some way with, the corporations which elected them, and three of these eight directors were the President and the two Vice Presidents of the Belt. Some of the subordinate officers of some of the proprietary lines had served at times as officers of the Belt while they were also officers of proprietary lines, but the evidence does not show that this was true of all of the Belt's officers, and it was not true of the Belt's subordinate employees conducting the switching operations of the Belt. For instance, Magee, the yard master, said that he was the Belt's employee, and the Belt had made contracts with unions concerning union members who worked for it.

According to the evidence in this case, the Belt has been maintained in form as, and operated in form as, a separate corporation. Thus it acquired, by lease or purchase, and still owns the terminal grounds and tracks at the Union Depot, and it erected and still owns this depot. The funds for its original acquisitions were advanced by the proprietary lines, but the Belt reimbursed these companies from the proceeds of a $5,000,000 bond issue which it sold to the public. The Belt, acting through its own officers and an executive committee of its board of directors made up of some of these directors, employs, pays, disciplines and discharges its own employees and determines the claims of said employees, and has made contracts with various unions concerning its employees who are members of said unions. We have mentioned instances of persons being at the same time officers of the Belt and of a proprietary line. There is nothing to show that these persons were not freely appointed by officers of the Belt acting on their own discretion. The Belt operates twenty-two diesel locomotives, at least some of which it owns, and owns and leases numerous other items of equipment used in its business. It employs a purchasing agent, and its purchases are made pursuant to authority granted by the executive committee of the Belt's Board of Directors. The Belt has in effect its own tariffs, approved by the Interstate Commerce Commission and by the Texas Railroad Commission, of the charges it makes to railroads other than its proprietary lines (and lines whose charges are controlled by contract) for switching operations. The principal part of the Belt's business is to switch cars, both for its proprietary lines and for other lines using its facilities, and all this it does with its own equipment, operated and directed by its own employees.

The evidence so far stated shows that the proprietary lines did nothing more than what stockholders are authorized to do, and the evidence relied upon by the plaintiff to sustain his contention that the Belt was no more than an instrumentality or department of the proprietary lines seems to us to go no further. This evidence, with our comments thereon, consists of the following matters:

(1) In the contract between the Belt and its proprietary lines, in force when the plaintiff was hurt, the Belt agreed, on the written demand of any of the proprietary lines, to dismiss any officer or employer of the Belt which said proprietary line deemed incompetent, negligent or guilty of unfairness or discrimination. This provision respects the corporate identity of the Belt; it is the Belt, not the complaining stockholder, which is to discharge the employee. Furthermore, it is to be borne in mind that the Belt is the Houston terminal of its proprietary lines and that the Belt performs all of the switching services at Houston required by its proprietary lines. According to the evidence in this case, this provision of the contract seems to be proper as one for the protection of the proprietary lines. We have not considered the question, whether the complaining proprietary must have some basis in fact for its demand.

(2) The application of the Belt and its proprietary lines to the Interstate Commerce Commission for authority to perform certain acts contains statements that the proprietary lines *control* the Belt. The Commission's opinion describes the service rendered by the Belt and states that "such service at present is performed by the Belt for the proprietary carriers as their *agent*" under an agreement which was the one in force when plaintiff was hurt. The agreement between the Belt and its proprietary lines which this opinion of the Interstate Commerce Commission approved (and which supplanted the agreement in force when the plaintiff was hurt) refers to the proprietary lines and two others as "using

lines" and provides that the Belt shall perform service for these lines "as agent" for said lines. The plaintiff also proved the title of a section of this contract but did not prove the contract provision itself.

All of the statements we have referred to are in general terms and there is nothing in addition to the expressions themselves which defines them. It does not appear that any question or issue arose in the Interstate Commerce Commission concerning the nature of the Belt's agency or the proprietary lines' control, or that the parties had in mind, or that the Commission was required to make, any distinction between servant and independent contractor. These general statements respecting *agency* and *control* are consistent with the evidence showing how the Belt was owned and operated. As stockholders, the proprietary lines did have a power of control over the Belt, and since the Belt actually did all of the switching of cars at Houston for the proprietary lines it was in a sense their agent for that purpose, and in this sense the proprietary lines *used* the Belt and its facilities, as they did when they ran their passenger trains into the Union Depot. Furthermore, the term "agent" as used in these expressions is only a legal conclusion. So, under all of these circumstances, the evidence which shows how the Belt was actually operated should be given the effect of controlling and explaining the general statements referred to.

(3) The trustee and the corporations he represents on this appeal were not parties to United States v. Houston Belt & Terminal Railway Co., 5 Cir., 210 F.2d 421, and, too, the opinion of the Court recognizes the Belt as a separate corporation and terms it a common carrier. The trustee and the corporations he represents also were not parties to Texas & N. O. R. Co. v. Houston Belt & Terminal Railway Co., Tex.Civ.App., 227 S.W.2d 610, and the difference between servant and independent contractor seems not to have been involved in that case. Respecting the Belt's conten-

tion of agency in these cases, see the comments in the two paragraphs immediately preceding this. The aid which the Belt has furnished its proprietary lines to give them an advantage over the competing T. & N. O., referred to both in the decision last cited and in the testimony of the witness Schill, indicates an association or joint action more strongly than an agency, actual or constructive. It is not necessarily proof of domination that a corporation gives a preference to its own stockholders.

(4) The Belt operates at a deficit and this the proprietary lines pay. Too, no extra charge to a shipper of freight is made by a proprietary line for the switching service performed by the Belt, nor does the Belt charge the proprietary lines the rate fixed by its tariff for its services. Instead, the net expense of the Belt, that is, the deficit, is determined each month and is then divided among the proprietary lines according to the extent of the service rendered each line by the Belt. Thus the division is not arbitrary, and the way in which it is made and the sums owed are paid respects the separate identity of the Belt. It is the Belt which determines the sum each line is to pay, and the Belt renders each line a bill for its part and collects this sum. The circumstances referred to in this paragraph on which plaintiff relied might have more weight in connection with other circumstances showing a disregard of the Belt's identity, but considered alone these various arrangements are such as the Belt might reasonably make with its own stockholders and yet continue its separate existence. After all, if the Belt charge full tariff and make a profit, this goes back to the ones who paid it—unless a tax be first deducted. We are assuming that the arrangement violates no rule of law and does not deprive the Belt of assets needed to pay its obligations, including one such as plaintiff's judgment.

These various matters relied on by the plaintiff to prove the Belt only an instrumentality seem to us to support the findings to Issues 3 and 4 no more when considered together than when considered separately. See Friedman v. Vandalia Railroad Co., 8 Cir., 254 F. 292, at page 294.

The real question raised by the plaintiff's contention that the Belt is only an instrumentality of the proprietary corporations is whether the Belt's corporate identity shall be disregarded and the Belt treated as being, in legal effect, no more than a part of the proprietary lines. This the courts will not do merely because the proprietary corporations own all of the Belt's stock (we repeat, the legality of this ownership is unquestioned) nor because, in addition, there are interlocking directorates and some officers in common. For the proprietary corporations to be liable for the plaintiff's injury on the theory prepounded by the plaintiff, these corporations must exceed their powers and rights as stockholders and, acting through their own officers, conduct and manage the Belt's affairs instead of leaving these matters to the decision of the Belt's own officers, freely acting as officers of the Belt. In Pullman's Palace-Car Co. v. Missouri Pacific Railway Co., 115 U.S. 587, 6 S.Ct. 194, at page 198, 29 L.Ed. 499, at page 502, the court said: "The Missouri Pacific Company has bought the stock of the St. Louis, Iron Mountain & Southern Company, and has effected a satisfactory election of directors, but this is all. It has all the advantages of a control of the road, but that is not in law the control itself. Practically it may control the company, but the company alone controls its road. In a sense, the stockholders of a corporation own its property, but they are not the managers of its business or in the immediate control of its affairs. Ordinarily they elect the governing body of the corporation, and that body controls its property. Such is the case here. The Missouri Pacific Company owns enough of the stock of the St. Louis, Iron Mountain & Southern to control the election of directors, and this it has done. The directors now control the road through their own agents and executive officers, and these agents and officers are in no way under the direction of

the Missouri Pacific Company. If they or the Directors act contrary to the wishes of the Missouri Pacific Company, that company has no power to prevent it, except by the election, at a proper time and in the proper way, of other directors, or by some judicial proceeding for the protection of its interest as a stockholder. Its rights and its powers are those of a stockholder only. It is not the corporation, in the sense of that term as applied to the management of the corporate business or the control of the corporate property." See also: Peterson v. Chicago, R. I. & Pacific Railroad Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Kingston Dry Dock Co. v. Lake Champlain Transportation Co., 2 Cir., 31 F.2d 265; Berkey v. Third Avenue Railway Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599; State v. Swift & Co., Tex.Civ.App., 187 S.W.2d 127; Fletcher, Cyclopedia Corporations, Sec. 43, p. 155 et seq., Sec. 4878, p. 353.

Doubtless the exercise of control over the subsidiary's affairs which constitutes the latter a mere instrumentality of the stockholder corporations may be proved by circumstances; but the evidence in this case is not sufficient to show that the Belt's proprietary lines exercised such a control over the Belt. We sustain the trustee's contention, and to this extent we sustain his Points I to V, inclusive. The plaintiff's Counter-point 2 is overruled.

The plaintiff contends further that it is not material whether the Belt was an independent contractor or in legal effect a mere servant because, it is argued, the plaintiff's employers had delegated to the Belt the performance of an absolute and non-delegable duty which they owed the plaintiff as their employee. In plaintiff's first counterpoint, this non-delegable duty is identified as one to furnish a safe place to work, although with this the plaintiff has coupled another matter which we deem a separate ground of liability. We agree with the defendant that no violation of the duty to provide a safe place to work was

proved. There is no evidence of any defect in the plaintiff's car, or in the track over which it moved, or for that matter in the equipment involved in the moving of this car. It was the negligent performance of the switching operation, the conduct of one or more members of the switching crew, which caused the plaintiff's injury. Labatt's Master & Servant states as follows the general rule of decision before the enactment of statutes affecting this rule (particularly those concerned with the fellow servant rule and the matter of assumption of risk): "All the authorities are agreed as to the general proposition that a master who has furnished a reasonably safe place to work in * * * can not be held liable to a servant whose co-servant has, by his negligence, rendered that place * * * unsafe, without the master's fault or knowledge." Section 1515, p. 4540, 2nd Edition. For Texas decisions, see: Galveston, H. & S. A. Ry. Co. v. Waldo, 119 Tex. 377, 29 S.W.2d 323; San Antonio Brewing Ass'n v. Sievert, Tex.Civ.App., 182 S.W. 389; Wells Fargo & Co. v. Page, 29 Tex.Civ.App. 489, 68 S.W. 528. Also see: 29 Tex.Jur. 189, Sec. 104; 35 Am.Jur. 784, Sec. 359; 56 C.J.S., Master and Servant, § 333(1) and (3), pages 1111, 1114.

However, the argument under the plaintiff's first counterpoint, and the counterpoint itself, involve another ground of liability, namely, a delegation by the trustee's corporations to the Belt of the performance in part of franchises which the State of Texas has granted the trustee's corporations. The right of franchise said to be performed by the Belt is the switching of cars. The City of Houston is one of the points to and from which the trustee's corporations and the other proprietary lines carry passengers and freight, and these passengers are delivered and taken up at the Belt's depot, and the carriage of freight into and out of Houston also involves the use of the Belt's facilities. We infer that the trustee's corporations and the proprie-

tary lines take their trains into and out of the Belt's tracks, but all switching of cars at Houston, both passenger and freight, for the trustee's corporations and for the proprietary lines is performed by the Belt. In this sense it may be said that the Belt is performing, in part, a service which the other railroad corporations mentioned were enfranchised to perform.·

However, as we have stated, the plaintiff was injured in a switching operation, and this operation occurred and plaintiff was injured on the Belt's own property, not on property belonging to any of the trustee's corporations, and was performed by the Belt's own employees, operating the Belt's equipment.

Furthermore, we have held that the Belt is to be treated as a corporation separate and distinct from the trustee's corporations, and we have mentioned the Belt's tariff of charges, approved by Interstate Commerce Commission and Texas Railroad Commission.

Still further, the plaintiff does not question the legality of the agreement under which the Belt switches cars for the trustee's corporations, or the legality of this service itself.

All this being true, we shall have to deal with the plaintiff's contention on the assumption that the Belt and its switching service were authorized by law. The exact date when the Belt was incorporated was not proved, but if it received its charter in 1905 there was, in Subdivisions 21 and 53 of Chapter 130, Acts 1897, and in Chapter 109, Acts 1905, authority for the creation of such a corporation as the Belt appears to be, performing services such as the Belt has performed. And also see Subdivisions 67 and 72 of Art. 1302 and see Art. 6549, R.S.1925.

It follows, then, that the trustee's corporations and the other proprietary lines could lawfully delegate to the Belt such performance of their franchises as the switching service of the Belt involved.

For it was to perform such services that the Legislature authorized the creation of such a corporation as the Belt appears to be; the Belt was exercising its own franchise in switching the plaintiff's car.

And, too, if the Belt can be a separate corporation and acquire, own and operate its system of tracks and depot, and if it can make a contract, all of which it evidently has lawful authority to do, it must have the right to stipulate for the powers of an independent contractor. In fact, the Belt's control of its tracks and its switching operations would seem to be necessary to the safety of every one using those tracks; and then, the Belt's officers must consider the possibility of the Belt being liable for what occurs on those tracks.

■ All of these railroad corporations, including the Belt, were subject to the Texas Railroad Commission and the Interstate Commerce Commission, each of these bodies having exercised jurisdiction over the Belt to the extent, at least, of approving its tariff of switching charges, and the absence of any statute specifically regulating liability is deemed immaterial. See: Missouri P. R. Co. v. Watts, 63 Tex. 549; Gulf, C. & S. F. Ry. Co. v. Miller, 98 Tex. 270, 83 S.W. 182; Houston E. & W. T. Ry. Co. v. Anderson, 120 Tex. 200, 36 S.W.2d 983; Broughton v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App, 186 S.W. 354. We think that the plaintiff has shown no ground for holding that the Belt's capacity as independent contractor in switching plaintiff's car should be disregarded.

Plaintiff's counterpoint 1 and the contentions made thereunder are denied.

These comments adjudicate the contentions made by the plaintiff in support of the judgment and it is unnecessary to discuss other contentions made by the trustee. But all of the facts pertaining to the plaintiff's contentions respecting non-delegable duty are undisputed and we are not satisfied that the petition, in the absence of an ex-

ception, is insufficient to support these contentions. Therefore, we have decided these contentions on their merits. Since our conclusions require a reversal of the trial court's judgment, that judgment is hereby reversed, and it appearing that the cause has been fully developed judgment is rendered that plaintiff take nothing against the trustee and the corporations he represents on this appeal.